THE STATE OF OHIO, APPELLEE, *v.* SLAGLE, APPELLANT.

[Cite as *State v. Slagle* (1992), 65 Ohio St.3d 597.]

(No. 90–1815—Submitted September 23, 1992—Decided December 31, 1992.)

598

*Stephanie Tubbs Jones,* Prosecuting Attorney, *Karen L. Johnson, William R. Caine* and *Elaine Welsh,* Assistant Prosecuting Attorneys, for appellee.

*David L. Doughten* and *Albert Sammon,* for appellant.

HOLMES, J.  Billy Joe Slagle appeals his convictions and sentence of death. We have independently balanced the aggravating circumstances against the mitigating factors.  For the reasons that follow, we affirm.

### I

We first consider whether reversible error occurred during the guilt phase of appellant's trial.  He asserts thirteen propositions of law relating to this phase.

### A

Appellant first asserts that his Fifth Amendment rights were violated when he was questioned at the city jail approximately six hours after his arrest.  He asserts that he was intoxicated and was unable to knowingly, intelligently and voluntarily waive his rights to remain silent and to obtain legal counsel.

The trial court held a hearing to consider Slagle's pretrial motion to suppress statements he made to the police. After his arrest Slagle made two statements: one at the time of his arrest, a second approximately six hours later at the city jail. The trial court suppressed the first statement; that ruling has not been challenged. As to the second statement, the court heard evidence that Detective McKibben interviewed Slagle at approximately 10:00 a.m. at the jail and fully advised him of his constitutional rights. According to McKibben, Slagle was alert, agreed to waive his rights, answered questions, and did not ask for an attorney. At the suppression hearing, Slagle testified that he had consumed alcohol and marijuana and that he only faintly remembered being arrested. He said that he remembered neither the questions he was asked, nor being advised of his rights. After hearing this evidence, the trial court declined to suppress the statements Slagle made at the city jail to Detective McKibben.

Whether a confession is involuntary depends upon "the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, paragraph two of the syllabus. At a suppression hearing, the strength of the evidence and the credibility of the witnesses are to be determined by the trial court.

The evidence presented to the trial court supports its decision to allow appellant's voluntary confession into evidence. A review of such evidence fully supports the trial court's finding, indicating, as it does, that appellant was neither intoxicated nor impaired. Appellant's first proposition of law lacks merit.

## B

In his second proposition of law, appellant argues that he was unconstitutionally denied a fair and impartial jury because the state exercised its peremptory challenges so as to exclude prospective jurors opposed to the death penalty. We have held that the state may exercise its peremptory challenges to remove jurors who oppose the death penalty. See *State v. Seiber* (1990), 56 Ohio St.3d 4, 13, 564 N.E.2d 408, 419 (citing *Lockhart v. McCree* [1986], 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137, which held that removing prospective jurors because they oppose the death penalty does not violate the federal Constitution). Therefore, appellant's second proposition of law is without merit. See, also, *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, syllabus (issues of law that have been decided by this court in

prior capital cases need not be reconsidered every time they are raised in a capital case).

## C

In his third proposition of law, appellant argues that the trial judge violated R.C. 2929.03(B). R.C. 2929.03(B) provides that, in a capital case, the trial court's instructions to the jury " * * * shall not mention the penalty which may be the consequence of a guilty or not guilty verdict on any charge or specification."

During the individual voir dire of those jurors not immediately excused, the trial judge gave this, or a similar, instruction:

"Then if the defendant is found guilty of the charge of aggravated murder and of any one of the aggravating specifications, felony murder specifications, that is, the rape, the aggravated robbery or the aggravated burglary, by evidence beyond a reasonable doubt, the case will proceed to the penalty phase."

Appellant argues that this instruction caused the jurors to know "that in order for the death penalty to be levied against Mr. Slagle, they would have to find him guilty of the specification." We do not see how this instruction informed the jurors of the particular penalty which could be the consequence of a particular verdict. A similar argument was rejected in *State v. Jester* (1987), 32 Ohio St.3d 147, 154, 512 N.E.2d 962, 970. Appellant's third proposition of law is without merit.

## D

In his fourth proposition of law, appellant argues that the trial court erred by admitting certain photographs into evidence. He asserts that photographs of Mari Anne Pope's body at the morgue, numerous photographs of the injuries Pope suffered, and photographs of himself in handcuffs after his arrest had little probative value, but were gruesome and highly prejudicial. The state argues that the photographs were admissible because they illustrated testimony and were probative of Slagle's intent to kill.

Under Evid.R. 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. *State v. Landrum* (1990), 53 Ohio St.3d 107, 121, 559 N.E.2d 710, 726; *State v. Maurer* (1984), 15 Ohio St.3d 239, 264, 15 OBR 379, 401, 473 N.E.2d 768, 791. The trial court may admit photographs in capital cases, even if the photographs are gruesome, as long as the probative value of such photographs outweighs the danger of material prejudice to an accused. *Id.* at paragraph seven of the syllabus; *State v. Morales*

(1987), 32 Ohio St.3d 252, 258, 513 N.E.2d 267, 273–274. We will not interfere with the trial court's balancing of probativeness and prejudice "unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby * * *." *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130.

Our review of the record indicates that the trial court properly admitted a number of photographs of the victim's body. However, the court also excluded a number of photographs. The photographs that were admitted were relevant and not cumulative. Also, they were used to illustrate the coroner's testimony. To prove its case, the state was required to prove that appellant purposefully killed Mari Anne Pope. The number and location of the stab wounds were probative of appellant's purpose. See *State v. Strodes* (1976), 48 Ohio St.2d 113, 116, 2 O.O.3d 271, 272, 357 N.E.2d 375, 378. The mere fact that appellant stipulated the cause of death does not preclude the prosecution's use of the photographs of Mari Anne Pope's body. See *Maurer, supra,* 15 Ohio St.3d at 265, 15 OBR at 401, 473 N.E.2d at 792.

Appellant also contests the admissibility of photographs taken of him at the crime scene. These pictures depicted appellant handcuffed and wearing no shirt, with bloodstains on his hands and underwear, as well as numerous bruises and scratches on his body and face. The photographs accompanied police officers' testimony regarding the arrest and supported the state's theories of attempted rape, identity of the perpetrator, and purposefulness of the killing.

The trial court did not abuse its discretion and acted quite properly. Thus, appellant's fourth proposition of law is without merit.

E

In his fifth proposition of law, appellant argues that the evidence showed that he was too intoxicated to form the specific intent to kill Pope. Although voluntary intoxication is not a defense, intoxication may interfere with a person's capacity to form the specific intent to kill. See *State v. Fox* (1981), 68 Ohio St.2d 53, 55, 22 O.O.3d 259, 260, 428 N.E.2d 410, 411–412; *Long v. State* (1923), 109 Ohio St. 77, 86–87, 141 N.E. 691, 694.

The weight of evidence and the credibility of witnesses are questions primarily for the jury. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. An appellate court shall affirm a finding below if there exists evidence in the record that supports each element of the crime beyond a reasonable doubt. In deference to the role of the jury, we evaluate the material facts in the light that is most favorable to its verdict. See *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61

L.Ed.2d 560; *State v. Davis* (1988), 38 Ohio St.3d 361, 365, 528 N.E.2d 925, 930.

A perusal of the record indicates that there is overwhelming evidence to support the finding that appellant was not intoxicated when he murdered Mari Anne Pope. At least three police officers testified that appellant displayed absolutely no sign of intoxication at the site of Mari Anne's murder. Another police officer stated appellant was alert, responsive and had no odor of alcohol. The officer who had custody of appellant from the moment of his seizure until they left Mari Anne's home nearly five hours later stated that there was nothing distinctive or unusual about appellant's demeanor or appearance during that time, a statement which clearly indicates that appellant was not intoxicated or impaired by drug use.

The homicide detectives who interrogated appellant at the scene shortly after the murder and later that morning at the Justice Center testified that appellant was alert and responsive and did not appear intoxicated. There was further testimony from two homicide detectives that appellant did not smell of alcohol at the scene and appeared to know what he was doing. His coordination and physical responses were quite good. Moreover, during the nearly five hours defendant was handcuffed and kept at the crime scene, he apparently never once requested to go to the bathroom. Such lack of need is strongly at variance with the espoused theory of heavy beer intake shortly before this murder. Furthermore, defendant's eyes were not bloodshot, as the photograph of him at the scene plainly declares.

Finally, the other evidence of the crime itself establishes a rational and non-impaired cognitive process. Upon arrival at his home, appellant placed the borrowed bicycle in a storage shed. He acted upon the long-known fact that Mari Anne lived alone. He selected the front window to enter, understanding it to be farthest from the bedroom and farthest from the view of his own family. His search of the house was systematic and by stealth. Even the removal of his shoes was ostensibly to make less sound, although it also made the later removal of his trousers easier to accomplish. When police officers arrived, appellant sought to hide and did so cleverly, even though handcuffed. When he sought to flee and resisted officers, he did so, according to the evidence, with speed and agility.

Even accepting appellant's story that he drank before he acted, the evidence is still overwhelming that he would have sobered by the time of the invasion of Mari Anne's home, and this for several reasons. Even appellant's enabler and drinking companion Davis testified that when the appellant left him, he displayed no physical symptoms of intoxication. All of this and more substantiate the jury's findings. Appellant was fully capable of forming the specific

intent to kill Pope and to commit the other crimes for which he was convicted. Appellant's fifth proposition of law is without merit.

## F

In his sixth and ninth propositions of law, appellant asserts that certain statements made and questions asked by the prosecution were improper and prejudicial. Appellant's sixth proposition asserts that the prosecution improperly attacked the appellant on cross-examination and in its closing argument. Appellant's ninth proposition asserts that the prosecution's closing argument included numerous prejudicial comments. We will first consider those statements and questions to which Slagle did not object at trial.

As a general rule an appellate court will not consider an alleged error that the complaining party did not bring to the trial court's attention at the time the alleged error is said to have occurred. This rule is a product of our adversarial system of justice. "Its purpose is practical: to prevent the defensive trial tactic of remaining silent on a fatal error during trial with the expectation of demanding a reversal on appeal if the verdict is guilty." *State v. Craft* (1977), 52 Ohio App.2d 1, 4–5, 6 O.O.3d 1, 3, 367 N.E.2d 1221, 1224. The rule is also consistent with the structure of our court system. An appellate court is not to be the first court to decide an issue; it is to review decisions made by the trial court after the lower court has had an opportunity to hear the arguments of the parties. "The traditional appeal calls for an examination of the rulings below to assure that they are correct, or at least within the range of error the law for sufficient reasons allows the primary decision-maker." Carrington, Meador & Rosenberg, Justice on Appeal (1976) 2.

But this general rule cannot be applied mechanically, especially to criminal appeals. Crim.R. 52(B) softens the general rule forbidding our consideration of unobjected-to errors. The rule provides that: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." This rule allows the appellate court, at the request of appellate counsel or *sua sponte*, to consider a trial error that was not objected to when that error was a "plain error."

The courts, however, have struggled to define "plain error" with precision. "Indeed," Professor Charles Alan Wright criticized, "the cases give the distinct impression that 'plain error' is a concept appellate courts find impossible to define, save that they know it when they see it." 3A Wright, Federal Practice and Procedure, Criminal 2d (1982) 337, Section 856.

The rule allowing appellate courts to consider "plain error" protects different interests and requires distinct inquiries. One question a reviewing court

must ask is whether the alleged error substantially affected the outcome of the trial. The appellate court must examine the error asserted by the defendant-appellant in light of all of the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred. This inquiry assures that justice is done in individual cases.

Appellant cites as error approximately seventeen statements and questions by the prosecutor that were not objected to at trial. Our review of each, in light of the purpose of Crim.R. 52(B)'s plain error exception, leads us to conclude that none amounted to plain error. Neither alone nor in the aggregate did these errors have an arguable effect on the outcome of the trial. Because "this record fairly shrieks the guilt" of the defendant, we cannot hold that without these few alleged improprieties the jury would have acquitted Slagle. See *Lutwak v. United States* (1953), 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593, 604. Appellant cites only instances in which the prosecutor may have characterized the evidence or questioned a witness with perhaps undue adversarial zeal. Even taken together, these comments did not render the trial fundamentally unfair.

As to those statements and questions to which Slagle did not object at trial, his sixth and ninth propositions of law lack merit.

### G

We now turn to those statements and questions which were objected to at trial. Appellant's sixth proposition of law asserts that the prosecutor's cross-examination of appellant was improper and inflammatory. He asserts that the prosecutor questioned him about prior criminal acts unrelated to Mari Anne Pope's murder, challenged his honesty, implied he was violent, and attacked his religious beliefs. The state responds that the conduct of the prosecutor did not render the trial fundamentally unfair and therefore appellant's argument lacks merit.

As a general rule cross-examination is "permitted on all relevant matters and matters affecting credibility." Evid.R. 611(B). The scope of cross-examination "lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion." *State v. Acre* (1983), 6 Ohio St.3d 140, 145, 6 OBR 197, 201, 451 N.E.2d 802, 806. To protect the criminal defendant, however, some matters may not be raised by the state.

Appellant argues that the prosecutor's questions regarding his criminal history were improper. The prosecutor asked Slagle if he had ever broken

"into a house to get money" prior to the night he killed Pope. Defense counsel unsuccessfully objected and appellant replied that he had done so twice. Evidence of other acts, however, is admissible for some purposes, including to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). "Our task is to determine first, whether any of the elements mentioned in the statute [R.C. 2945.59, the predecessor to Evid.R. 404(B)] were material to the issues at trial, and if so, whether the disputed testimony was relevant, as tending to prove a material element." *State v. Gardner* (1979), 59 Ohio St.2d 14, 20, 13 O.O.3d 8, 11, 391 N.E.2d 337, 342. Appellant's prior break-ins were relevant under Evid.R. 404(B) to his motive and intent in entering Pope's house.

Slagle argues that questions about prior break-ins were not legally relevant because he stipulated that he was guilty of aggravated burglary. However, because he did not stipulate to the burglary until the trial was over, the break-in testimony was relevant at the time it was made to establish the elements of aggravated burglary.

Appellant also argues that the prosecutor improperly disparaged his character and expressed personal opinions. During cross-examination, the prosecutor aggressively questioned appellant about his honesty and his intent. The trial court properly sustained a number of Slagle's objections when the prosecutor expressed his personal opinion and suggested that appellant had planned to commit other violent crimes, *i.e.*, killing the two Bloxham children, had they not escaped. The questions that were permitted were designed to elicit inculpatory answers on issues of material fact. Thus they were relevant and not prejudicial.

To the extent that the prosecutor may have crossed the line, any error was harmless beyond a reasonable doubt. See Crim.R. 52(A). Evidence of appellant's guilt was overwhelming and he received a fair trial. Thus, as to the questions and comments appellant objected to at trial, his sixth proposition of law is without merit.

## H

In his ninth proposition of law, appellant attacks the prosecutor's closing argument. He argues that the prosecutor improperly denigrated the defense, unfairly bolstered the credibility of the state's witnesses, and impermissibly inflamed the passions of the jury. Appellant objected to a number of these allegedly improper comments.

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78,

87. See *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 300. When we review a prosecutor's closing argument we ask two questions: "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885. The closing argument is considered in its entirety to determine whether it was prejudicial. *State v. Moritz* (1980), 63 Ohio St.2d 150, 157, 17 O.O.3d 92, 97, 407 N.E.2d 1268, 1273.

After carefully reviewing the entire argument, we conclude that while some of the remarks made by the prosecutor may have been somewhat improper, the argument as a whole did not taint the fairness of appellant's trial. The trial court sustained Slagle's objections to such comments, and repeatedly cautioned the jury not to consider them.

Because the improper comments were few, the cautionary instructions were adequate, and the evidence of guilt was overwhelming, we find that the prosecutor's improper comments amount only to harmless error. Appellant's ninth proposition of law lacks merit.

## I

In his seventh proposition of law, appellant argues that the trial court improperly excluded expert testimony offered by the defense. Before the defense case, the court granted the state's motion to exclude expert testimony offered by the defense on the ultimate issue of whether appellant's voluntary intoxication prevented him from forming the specific intent to kill Pope.

Opinion testimony on the ultimate issue of specific intent is inadmissible during the guilt phase of a criminal trial. Unless the defendant pleads insanity, expert psychiatric testimony is not admissible to show that the defendant lacked the capacity "to form the specific mental state required for a particular crime or degree of crime." *State v. Wilcox* (1982), 70 Ohio St.2d 182, 24 O.O.3d 284, 436 N.E.2d 523, paragraph two of the syllabus. " * * * [L]ay jurors need no expert testimony to determine whether the accused was too intoxicated to be able to intend anything." *State v. Cooey* (1989), 46 Ohio St.3d 20, 26, 544 N.E.2d 895, 906. Appellant's attempt to distinguish this case from *Wilcox* and *Cooey, supra,* is not persuasive. His seventh proposition of law, therefore, lacks merit.

## J

In his eighth proposition of law, appellant argues that the prosecutor improperly cross-examined a psychiatrist who was testifying for the defense about Slagle's competency and sanity. Slagle called Dr. Kurt A. Bertschinger

to testify regarding Slagle's alcoholism and to render an expert opinion on his ability to exercise judgment. In response to Bertschinger's direct testimony, the prosecutor could legitimately ask questions designed to elicit the psychiatrist's opinion that neither appellant's competency to stand trial nor his sanity was affected by his alcoholism. Cross-examination is "permitted on all relevant matters and matters affecting credibility." Evid.R. 611(B).

To be sure that the jury did not become confused, the trial court gave detailed instructions to the jury clarifying the purpose of the state's questions. These instructions were sufficient to ensure that appellant was not prejudiced by juror confusion. The jury found that appellant specifically intended to kill Mari Anne Pope after being fully instructed on the possibility of Slagle's intoxication.

Because there is no likelihood that the jury was confused by the cross-examination of Bertschinger, appellant's eighth proposition of law lacks merit.

## K

In his tenth, eleventh, and twelfth propositions of law, appellant asserts that the jury instructions were defective. He did not, however, object to those instructions at trial.

Crim.R. 30(A) provides in part that "a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." We have interpreted the effect of this rule to be that "[t]he failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus.

Unlike the plain error analysis under Crim.R. 52(B), the only inquiry we must make is whether the alleged error resulted in a clear miscarriage of justice in this particular case. Because none of the allegedly defective instructions caused a difference in the trial result, all three of appellant's propositions of law regarding the instructions are without merit.

In his tenth proposition of law, appellant argues that the trial court's instruction on the lesser included offense of involuntary manslaughter was insufficient. The trial court instructed the jury: "Involuntary manslaughter is causing the death of another as a proximate result of committing or attempting to commit a felony." We find that this instruction was sufficient to guard against the risk that the jury would convict appellant of aggravated murder only because it had no other realistic option. See *Beck v. Alabama*

(1980), 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392. Moreover, in an answer to a special interrogatory, the jury specifically found that appellant intended to cause Mari Anne Pope's death. In light of this finding, we conclude that a more detailed instruction on involuntary manslaughter would not have resulted in a different verdict.

In his eleventh proposition of law, Slagle asserts that the trial court's instruction that Slagle had stipulated guilt to aggravated burglary was, in effect, an instruction that Slagle had admitted to aggravated murder because aggravated burglary is a capital specification.

"A single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus. The trial court accurately instructed the jury that appellant stipulated his guilt to the aggravated burglary death penalty specification. The trial court also instructed the jury to decide whether appellant, purposefully and with specific intent, killed Mari Anne Pope before it considered the death penalty specifications. The trial court further instructed the jury on the presumption of innocence and reasonable doubt, on the necessity of finding purpose and intent, and on the possible effects of intoxication on intent. The trial court also instructed the jury that appellant's intent and his capacity to formulate that intent were disputed issues. Viewed as a whole, the instructions were not erroneous. Appellant's eleventh proposition of law is meritless.

In his twelfth proposition of law, appellant argues that the trial court's failure to give a limiting instruction concerning the evidence of appellant's other criminal acts was erroneous and prejudicial. The absence of such an instruction cannot even arguably be said to have made a difference in the verdict. The evidence was overwhelming that appellant had the capacity and intent to kill Mari Anne Pope and actually did kill her. We cannot say that the inclusion of such an instruction clearly would have changed the jury's verdict. Appellant's twelfth proposition of law is meritless.

## L

In his thirteenth proposition of law, appellant argues that his Sixth Amendment rights were violated because his attorneys did not effectively represent him. Appellant asserts that his attorneys improperly stipulated to crucial points, failed to object to erroneous jury instructions and request needed instructions, and introduced inappropriate evidence.

To merit reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must show (1) that his attorney's performance was

deficient, and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. See *State v. Hester* (1976), 45 Ohio St.2d 71, 79, 74 O.O.2d 156, 160–161, 341 N.E.2d 304, 309–310.

Appellant argues that he was prejudiced by defense counsel's stipulation to the aggravated burglary charge. The defense did stipulate that appellant caused Mari Anne Pope's death by stabbing her and that appellant was guilty of aggravated burglary. We cannot say that such stipulations were unreasonable decisions given the strength of the state's evidence. The police caught appellant inside Mari Anne Pope's home, his hands were covered with her blood, and he was holding a pair of bloody scissors. Three witnesses testified that he was in her bedroom; two heard him threatening her. Slagle confessed to the police that he stabbed Pope and burglarized her house. He repeated that confession in court. Defense counsel's decisions do not appear to have been deficient. See *Strickland, supra,* 466 U.S. at 689–690, 104 S.Ct. at 2065–2066, 80 L.Ed.2d at 694–695.

Appellant also argues that defense counsel should not have "agreed" not to question defense psychiatrists on the ultimate issue of appellant's capacity to form specific intent to commit the offenses. There was, in fact, no "agreement" to be made by defense counsel. Testimony as to the issue of appellant's capacity was excluded by the trial court in response to the state's motion. Defense counsel, therefore, did not err.

Finally, appellant argues that defense counsel should not have presented Dr. Hall as a mitigation expert. However, calling Dr. Hall was within the range of professional competence and judgment and breached no essential duty. Hall's testimony actually supported appellant. "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Strickland, supra,* at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697.

Appellant's counsel were both qualified criminal defense lawyers and neither failed in any essential duty. We cannot hold that appellant's legal representation was inadequate. Therefore his thirteenth proposition of law is without merit.

## II

We now turn to the sentencing phase of appellant's trial, regarding which appellant asserts seven propositions of law.

## A

In his eighteenth and twentieth propositions of law, appellant argues that Ohio's death penalty statutes are unconstitutional. The arguments he asserts have been previously considered and resolved by this court. See *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237; *State v. Bedford* (1988), 39 Ohio St.3d 122, 132, 529 N.E.2d 913, 923; *State v. Beuke* (1988), 38 Ohio St.3d 29, 38, 526 N.E.2d 274, 285; *State v. Buell* (1986), 22 Ohio St.3d 124, 136, 22 OBR 203, 213, 489 N.E.2d 795, 806; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 168–169, 15 OBR 311, 314–315, 473 N.E.2d 264, 272–273. They are without merit. See *State v. Poindexter, supra,* 36 Ohio St.3d 1, 520 N.E.2d 568, syllabus (issues of law that have been decided by this court in previous capital cases need not be reconsidered every time they are raised in a capital case).

## B

In his fourteenth proposition of law, appellant argues that permitting the jury to treat both aggravated robbery and aggravated burglary as aggravating circumstances artificially inflated a single felony murder and resulted in a constitutionally invalid sentence. He asserts that aggravated robbery and aggravated burglary are allied offenses of similar import. Aggravated robbery and aggravated burglary are not allied offenses of similar import where, as here, the offenses are committed separately, see *State v. Frazier* (1979), 58 Ohio St.2d 253, 12 O.O.3d 263, 389 N.E.2d 1118, and it was proper for the jury to consider both. This proposition of law is without merit.

## C

In his fifteenth proposition of law, appellant argues that the cumulative impact of the use, by the prosecution, of certain victim impact issues, "other act" evidence, and factors labeled "non-statutory aggravating factors" violated various constitutional rights of appellant. A review of the instances referred to indicates the prosecutor did not cause an unfair trial or create prejudicial error. See *State v. Beuke, supra,* 38 Ohio St.3d at 32–33, 526 N.E.2d at 281–282; *State v. DePew* (1988), 38 Ohio St.3d 275, 283, 528 N.E.2d 542, 552.

The prosecutor did assert that appellant showed no mercy for Mari Anne Pope, killing her while she prayed and begged for her life. However, prosecutors have some latitude to comment upon facts in evidence and fair inferences drawn therefrom. See *State v. Byrd* (1987), 32 Ohio St.3d 79, 82, 512 N.E.2d 611, 616. Moreover, prosecutor's reference to the victim's rights

did not violate constitutional guarantees. *Payne v. Tennessee* (1991), 501 U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720; *State v. Combs* (1991), 62 Ohio St.3d 278, 283, 581 N.E.2d 1071, 1077.

The prosecutor's brief reference to appellant's other criminal acts was not improper. Other criminal acts are part of his social history. See *State v. Hutton* (1990), 53 Ohio St.3d 36, 559 N.E.2d 432, paragraph one of the syllabus; *State v. Cooey, supra,* 46 Ohio St.3d at 35, 544 N.E.2d at 914. The prosecutor did not act improperly in calling for justice for the people of Ohio, nor did defense counsel object to those remarks. Also the prosecutor did not inject nonstatutory aggravating circumstances. A prosecutor can legitimately refer to the facts and the nature and circumstances of the offense, to refute any suggestion they are mitigating or to demonstrate why aggravating circumstances outweigh mitigating factors. *State v. Combs, supra,* 62 Ohio St.3d at 283, 581 N.E.2d at 1077; see, also, *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus.

## D

By his sixteenth and seventeenth propositions of law, appellant contends that there were deficiencies in the court's sentencing instructions, and that these deficiencies impermissibly tainted the jury's decision process. The record reveals, however, that appellant failed to object and thereby waived all but plain error. Crim.R. 52(B); *State v. Underwood, supra,* 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus. By the mere use of the term "recommendation" to refer to the jury's decision, the trial court did not misstate applicable law, diminish the jury's sense of responsibility or commit prejudicial error. See *State v. Johnson* (1989), 46 Ohio St.3d 96, 105, 545 N.E.2d 636, 645; *State v. Henderson, supra,* 39 Ohio St.3d at 29–30, 528 N.E.2d at 1243.

Appellant's seventeenth proposition of law also lacks merit. The trial judge's passing reference to "other mitigating factors, which are not applicable to this case," served as only a parenthetical comment. Even extensive references to inapplicable mitigating factors do not necessarily create prejudicial error. See *State v. Roe* (1989), 41 Ohio St.3d 18, 26, 535 N.E.2d 1351, 1361.

## III

We now independently consider, pursuant to R.C. 2929.05, whether the aggravating circumstances outweigh the mitigating factors and, if so, whether the sentence of death is proportionate and appropriate in appellant's case. Appellant's nineteenth proposition of law is merged into this analysis since it encompasses this very issue.

R.C. 2929.05 requires us to independently review the appropriateness of appellant's death sentence. It commands us to "determine if the evidence supports the finding of the aggravating circumstances," to decide "whether the sentencing court properly weighed the aggravating circumstances * * * and the mitigating factors," and, if necessary, to "consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases." R.C. 2929.05(A).

"R.C. 2929.05 requires this court to review the record and independently determine whether the aggravating circumstances the defendant was found guilty of committing outweigh the mitigating factors found to exist." *State v. Maurer, supra,* 15 Ohio St.3d at 244, 15 OBR at 383, 473 N.E.2d at 776. If we find that the aggravating circumstances do not outweigh the mitigating factors beyond a reasonable doubt, we must vacate the death sentence.

The aggravating circumstances are fully supported by the evidence. Appellant committed the unprovoked and merciless aggravated murder of Mari Anne Pope. Also, this offense was committed while appellant was committing or attempting to commit aggravated burglary and aggravated robbery. Finally, appellant was not only the principal offender, but the sole offender in the commission of this aggravated murder.

As to mitigating factors, only R.C. 2929.04(B)(4) is fully applicable, which requires that "[t]he youth of the offender" be considered. Appellant was eighteen at the time he murdered Mari Anne Pope. More precisely, appellant was nearer to nineteen years of age. The courts below rightly placed small reliance upon this factor under the circumstances of this case. At the time of the murder, appellant was a man of full legal age. He was an adult with all of the privileges and responsibilities of an adult. See, *e.g., State v. Hill* (1992), 64 Ohio St.3d 313, 335, 595 N.E.2d 884, 901 (murderer's age of eighteen given only slight weight); *State v. Byrd* (1987), 32 Ohio St.3d 79, 512 N.E.2d 611 (murderer's age of nineteen given only slight weight); *State v. Powell* (1990), 49 Ohio St.3d 255, 264, 552 N.E.2d 191, 201 (murderer was nineteen years of age); *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895 (nineteen-year-old murderer).

There was also testimony that appellant was immature. Yet many, if not most, murderers may be so characterized. It is immature selfishness, ego, or rage which has flowered in such persons that often become murderers. Appellant here is not different from most other murderers in this regard.

It was argued that appellant lacks "a significant history of prior criminal convictions and delinquency adjudications." R.C. 2929.04(B)(5). Upon a review of the record, we conclude that little, if any, weight can be accorded to this factor.

It is also asserted that appellant is an alcoholic, and genetically predisposed toward such, that he is "addicted" to marijuana, and that his use of both on the night before his crimes significantly contributed to the commission thereof. The evidence shows persuasively what the jury plainly concluded, *i.e.*, that such addictions and alleged intoxication played little or no role in the murder of Mari Anne Pope. No evidence exists tending to indicate that "at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law[.]" R.C. 2929.04(B)(3). This mitigating factor is thus inapplicable.

Further, mere alcoholism or other addictions, voluntary drunkenness and drug use are not mitigating factors. It is a fact that " 'more than one-half of all murderers are believed to have been intoxicated at the time of the act.' " Watterson, Just Say No to the Charges Against You: Alcohol Intoxication, Mental Capacity, and Criminal Responsibility (1991), 19 Bull.Am.Acad.Psychiatry Law 277, quoting Diagnostic and Statistical Manual of Mental Disorders (3 Ed.Rev.1987) 128. Such voluntary conduct should not reduce the punishment imposed by law.

Furthermore, this court has previously considered and rejected the notion that appellant's alcoholism or drug addiction ought to receive much weight as a mitigation factor during the sentencing phase. In *State v. Morales, supra,* 32 Ohio St.3d at 261, 513 N.E.2d at 277, at fn. 8, we considered and rejected this claim by one who was a "full-blooded Shoshone Indian," with an asserted predisposition toward alcoholism. Similarly, in *State v. Hicks* (1989), 43 Ohio St.3d 72, 80, 538 N.E.2d 1030, 1039, we concluded that acting under the influence of drugs, in conjunction with other mitigating factors, was entitled to "almost negligible weight." Most recently, in *State v. Lawson* (1992), 64 Ohio St.3d 336, 352, 595 N.E.2d 902, 914, we concluded that drug and alcohol ingestion prior to the murder had only a "weakened" impact on the weighing process at issue.

The court has reviewed all of the other circumstances applicable, including appellant's personal history. It is concluded that the aggravating circumstances greatly outweigh the mitigating factors. The courts below also thoroughly weighed such factors and concluded properly.

## IV

We now consider whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases. We conclude that the sentence is neither excessive nor disproportionate. See, *e.g., State v. Smith* (1991), 61 Ohio St.3d 284, 574 N.E.2d 510; *State v. Bonnell* (1991), 61 Ohio

St.3d 179, 573 N.E.2d 1082; *State v. Wiles* (1991), 59 Ohio St.3d 71, 571 N.E.2d 97; *State v. Jackson* (1991), 57 Ohio St.3d 29, 565 N.E.2d 549; *State v. Landrum, supra; State v. Lott, supra; State v. Johnson, supra; State v. Van Hook* (1988), 39 Ohio St.3d 256, 530 N.E.2d 883; *State v. Greer* (1988), 39 Ohio St.3d 236, 530 N.E.2d 382; *State v. Holloway* (1988), 38 Ohio St.3d 239, 527 N.E.2d 831; *State v. Barnes* (1986), 25 Ohio St.3d 203, 25 OBR 266, 495 N.E.2d 922.

We decline appellant's invitation to vary our approach to proportionality review, and affirm our view in *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY and RESNICK, JJ., concur.

DOUGLAS, J., concurs in judgment only.

WRIGHT and H. BROWN, JJ., dissent.

WRIGHT, J., dissenting. In my experience as a judge, nothing that I have undertaken is as hard a task as determining a sentence of life or death for a person convicted of aggravated murder. The General Assembly has placed on each member of this court the responsibility to read the entire record in death penalty cases and to conduct an independent review to determine whether the aggravating circumstances of the crime or crimes outweigh the mitigating factors.

In the past eight years I have had this task in nearly one hundred cases and have never shirked this responsibility. I am not hesitant on moral grounds to impose the death penalty when required, but firmly believe that it should be assessed only when the defendant has demonstrated little or no behavior that requires society's mercy. I believe that the General Assembly has codified our natural human tendency to show mercy by requiring the courts of this state to vacate a death sentence unless the aggravating circumstances outweigh the mitigating factors *beyond a reasonable doubt*—the heaviest burden under the law. In my view, this case quite clearly calls for mercy and thus I must respectfully dissent from the judgment reached by the majority affirming the sentence of death.[1]

---

1. I agree with the majority that Slagle's propositions of law concerning his conviction are without merit. However, I am compelled to clarify one aspect of the majority's opinion involving discussion of the plain error rule. The majority correctly states that the rule "protects different interests and requires distinct inquiries." The majority discusses one

The majority's recital of the facts in some respects goes far beyond the four corners of the record and in other respects ignores it altogether. Its attempt to write the facts in such a way as to make Billy Slagle a calculating, cold-blooded killer is simply not supported by the evidence presented at trial. If the majority honestly believes that an eighteen-year-old victim of substance abuse with no criminal record should die in the electric chair then it should so state—it should not, however, rewrite the facts of this case to make Slagle's execution more palatable.

The significant facts which the majority omits are as follows:

On the afternoon of August 12, 1987, Billy Slagle went to the home of his friend, Mike Davis. Davis lived approximately two miles from the house Slagle shared with his mother and stepfather. The two began drinking beer and smoking marijuana. Before 1:00 a.m. the next morning, Davis and Slagle had consumed fifteen to twenty beers each and smoked marijuana, and Slagle had consumed a number of shots of whiskey. According to Davis, Slagle acted "buzzed" and was "having a good time," but did not stagger, fall, or vomit. At approximately 1:00 a.m., Davis went to sleep.

Andrea Davis, Mike Davis's sister, also saw Slagle drinking beer and whiskey on the afternoon of August 12, that evening, and the early morning of August 13. According to Ms. Davis, at approximately 2:30 a.m., Slagle's eyes were bloodshot, his speech was slurred, he was very quiet, and he seemed drunk.

William Vivolo, a neighbor of the Davises, saw Mike Davis and Slagle drinking at Davis's house the night of August 12 and early the next morning. Vivolo last saw Slagle at approximately 3:15 a.m. on August 13 riding a bicycle. Vivolo believed that Slagle was intoxicated. When Vivolo saw him,

---

purpose—to protect individual criminal defendants from injustice. However, the majority fails to discuss the second purpose of the plain error rule contained in Crim.R. 52(B).

The second purpose of Crim.R. 52(B) is to protect the court system as an institution. An error is "plain" if it is so fundamental that if it were to stand it would "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson* (1936), 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557. Professor Wright explained: "It is not a miscarriage of justice to convict a guilty man, but if he is convicted in a way inconsistent with the fairness and integrity of judicial proceedings, then the courts should invoke the plain error rule in order to protect their own public reputation." 3A Wright, Federal Practice and Procedure, Criminal 2d (1982) 341, Section 856. The question the reviewing court must ask is whether the challenged error was a clear violation of a fundamental constitutional right. The strength of the other evidence introduced during the trial is not relevant here because it is not the defendant's individual rights but the character and integrity of the rule of law that are being protected by this line of inquiry. See *People v. Green* (1979), 74 Ill.2d 444, 454–455, 25 Ill.Dec. 1, 6, 386 N.E.2d 272, 277 (Ryan, J., concurring).

Slagle had left the Davises' house on a borrowed bicycle and was heading home.

Slagle has a history of serious drug and alcohol abuse and dependency. He testified at his trial that he was eighteen years old at the time of the offense. He had stopped going to school in the eleventh grade and worked different jobs for short periods of time. He admitted drinking and taking drugs daily, having started when he was fifteen years old. Slagle said that when he was not working, he sold marijuana and twice had broken into homes looking for money.

Maureen Dee, a social worker specializing in adolescent chemical dependency, evaluated Slagle in 1986. She found that he needed further evaluation and special help, and recommended group therapy and job counseling. Slagle attended five group therapy sessions, but continued to drink and soon stopped going to therapy.

Psychologist Isidore Helfand evaluated Slagle in November 1986. Helfand found that Slagle had compulsive character problems and drank approximately twelve beers and smoked marijuana daily. Dr. Peter Rogers, a pediatrician specializing in chemical dependency, testified that Slagle had participated in an in-patient drug and alcohol rehabilitation program in December 1986. While in the program, Slagle exhibited anger, resentment, depression, alienation, and problems with authority. Slagle was diagnosed as chemically dependent on alcohol and marijuana and he was treated for twenty-eight days; the treatment included four hours daily of group therapy. Slagle did not respond well to treatment. After he was discharged he returned only once for outpatient treatment.

Dr. Kurt A. Bertschinger, a forensic psychiatrist, agreed Slagle was chemically dependent on alcohol. Bertschinger testified that Slagle's family history and his Native American heritage made it possible that he was genetically predisposed to alcoholism. Because Slagle had over twelve beers, several shots of whiskey, and several marijuana cigarettes in the twelve hours before the offense, Bertschinger agreed with the conclusion of a psychologist that Slagle killed Pope "while his reason and his ability to control himself were highly impaired by alcohol and drugs."

At trial, Slagle told the jury that he had suffered blackouts and memory loss after drinking heavily. He did not recall talking with Pope or taking his shoes off. He stipulated that he stabbed Pope to death, but he claimed not to know why he stabbed her. He recalled seeing the flashlight at the window and trying to hide because a police officer threatened to blow his head off. Slagle admitted he went into Pope's house, knowing that she was likely to be home, to steal something. Counsel agreed that his testimony constituted an

admission of all of the elements of aggravated burglary. He told the jury that at no time had he intended to harm Pope and that he was very sorry for what had happened.

During the sentencing phase of the trial, Slagle's mother, Patricia Wakefield, testified that she had left Slagle's father, Billy Joe Slagle, Sr., when Slagle was seven years old. She told the jury that when he was young, Slagle kept to himself and did not communicate very much, but he was a good child. Wakefield said that early in his life Slagle did very well in school, but by the eleventh grade he failed everything. The family moved frequently and Slagle changed schools yearly. When he was thirteen years old, Slagle went to live with his father, but he moved back to his mother's house when he was seventeen. Wakefield believed Slagle could be rehabilitated and would not have committed this crime if he had been sober.

Billy Joe Slagle, Sr. also testified. He described his son as an ordinary child who did his chores, went to school, and was disciplined when he misbehaved. Billy began skipping school when he was sixteen and his father suspected that Billy was abusing alcohol and drugs. Lisa Slagle, Billy's eighteen-year-old sister, testified that she was close to him, but that Billy did not express himself and was quiet. She testified that Billy was sorry for what he had done.

Dr. Thomas W. Hall, a clinical psychologist, testified that he believed that Slagle apparently committed the murder while his reason and ability to control himself were highly impaired by alcohol and drugs. Hall was a witness for the *state*. He concluded, however, that Slagle "was not suffering from a major mental disease or defect which impaired his ability to know the wrongfulness of his acts or to refrain from doing them."

Dr. Bertschinger, who had earlier testified about Slagle's alcohol problem, explained to the jury the disruptive influence of constant family moves on Slagle's childhood development. He testified that Slagle's emotional growth was severely limited and that Slagle felt deserted and abandoned. Slagle had few friends and developed emotionally only to the level of a twelve year old. Slagle had antisocial traits consistent with an antisocial personality disorder, although the doctor did not diagnose that disorder. He testified that if incarcerated, Slagle would benefit by being away from alcohol and by attending Alcoholics Anonymous meetings. He expressed his opinion that after a long period of incarceration, Slagle's alcoholism would likely be in remission and Slagle's antisocial personality traits would diminish.

Slagle gave an unsworn statement to the jury and reaffirmed his sorrow for what he had done to Mari Anne Pope and stated that he had not intended to

kill her. He asked for imprisonment with parole consideration after twenty years.

I now turn to weighing the aggravating circumstances and mitigating factors. As correctly stated by the majority, the aggravating circumstances were proved beyond a reasonable doubt: Slagle murdered Mari Anne Pope while committing aggravated robbery and aggravated burglary. The question for the court is whether these circumstances outweigh the following mitigating factors beyond a reasonable doubt.

The most compelling mitigating factor in this case is Slagle's age. Slagle was eighteen years old at the time of the murder. Because Slagle was legally an adult, he is eligible for the death penalty. However, the General Assembly, recognizing the ameliorating factor of age, requires sentencing authorities to specifically consider "[t]he youth of the offender[.]" R.C. 2929.-04(B)(4).

The majority minimizes the significance of Slagle's age. Yet the General Assembly expressly directed us to consider age a mitigating factor while in the same statute it makes eighteen the earliest age at which the death penalty is available. If we do not give real weight to the fact that Slagle was eighteen at the time of the murder, is there any age which may be considered a mitigating factor?

Eighteen, of course, is just barely the age of majority. Even in the best of circumstances an eighteen year old lacks the judgment of a mature adult. All of us who have lived through our late teens and twenties and seen our children grow through these years know that there is a significant difference between an eighteen year old and a twenty-one or twenty-two year old. Given that difference I would impose the death penalty upon an eighteen year old in only the most extreme circumstances. See, *e.g.*, *State v. Hill* (1992), 64 Ohio St.3d 313, 595 N.E.2d 884 (eighteen-year-old defendant sexually assaulted, tortured, burned, and murdered child victim).

The second mitigating factor I consider is Slagle's lack of a prior criminal record. R.C. 2929.04(B)(5) recognizes a mitigating factor if the accused lacks "a significant history of prior criminal convictions and delinquency adjudications." I believe this factor is applicable because Slagle had no prior criminal convictions or delinquency adjudications. While two exhibits suggested that Slagle had contact with the juvenile court system, the record does not reveal any formal adjudications.[2] Therefore, Slagle did not have a "significant

---

2. The court of appeals referred to Slagle's being "confined to a detention home as a juvenile for burglary, auto theft and felonious assault." However, that finding is based upon personal histories of Slagle prepared by a social worker and a court psychologist, which were not

history" of criminal conduct. Under the laws of this state the murder of Mari Anne Pope was Slagle's first criminal offense or adjudication—therefore R.C. 2929.04(B)(4) is a significant mitigating factor.

R.C. 2929.04(B)(7) broadly directs us to consider "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death." Several other mitigating factors are revealed in Slagle's history, character, and background. Slagle presented uncontroverted evidence that he had been drinking heavily in the twelve hours before he killed Pope. The record shows that Slagle is chemically dependent on alcohol and marijuana, and that his family and genetic background in all likelihood predisposed him to alcoholism. His substance abuse problems prevented him from finishing high school or holding a steady job. Constant family moves, his parents' divorce, and a dysfunctional family retarded Slagle's emotional development to the level of a twelve year old. Defense experts agreed that Slagle's disease of alcoholism and drug dependence could be successfully treated.

Although I agree that Slagle formed the purposeful intent to kill, the evidence shows that the murder resulted, in part, from Slagle's alcoholism and drug dependency. Under the circumstances of this case, the fact that he was an alcoholic and that the offense resulted from that alcoholism are significant mitigating factors.

The majority warns that this court has never recognized alcoholism or voluntary intoxication as a mitigating factor. I agree. However, I am also aware that this is not a case of "mere alcoholism" for the reason that Slagle was a child when he became an alcoholic. Under the circumstances of *this case* childhood alcoholism is a mitigating factor under R.C. 2929.04(B)(7). I firmly believe that Slagle's history of alcohol and drug abuse as a child led directly to the murder of Mari Anne Pope. While we cannot and should not routinely show mercy to an adult alcoholic who commits murder, we must pause when we see a defendant who became an alcoholic at fourteen and was never given the treatment and attention necessary to cure this disease.

I wish to be clear: I am not proposing or advocating a new mitigating factor which would have wide application. I simply believe that under these circumstances adolescent alcoholism is one factor that is "relevant to the issue of whether the offender should be sentenced to death." R.C. 2929.04(B)(7).

---

introduced at trial or during the sentencing phase. Any admissions Slagle made during cross-examination as to other wrongdoings do not qualify under R.C. 2929.04(B)(5) as "criminal convictions" or "delinquency adjudications." I believe that the court of appeals' reliance on this history was improper.

The mitigating factors indicate to me that Billy Slagle did not possess the emotional maturity to act as society would have him act. The testimony presented by Slagle in the sentencing phase of his trial shows that he was an immature, delinquent eighteen year old who irresponsibly and recklessly entered Mari Anne Pope's house with the intent to steal. Slagle was a child who had been impaired by drugs and alcohol for the better part of four years and whose judgment was so clouded on the night of the murder that it was unlikely that he rationally considered the consequences of his actions. In a situation in which the law requires us to act rationally, Slagle acted irrationally. The record does not show, however, that Slagle has a calculating or depraved heart. Nor does it show that he intended to harm or kill Pope when he entered her house.

Billy Slagle cannot and should not be excused from punishment for his crime. Society has the right to exact a heavy penalty for the taking of a life. Yet I cannot join the court in its decision to put Slagle to death, because this case is one in which I must exercise my independent judgment and I am doing so on the side of mercy. After weighing both, I conclude that the aggravating circumstances do not outweigh the mitigating factors beyond a reasonable doubt. For the foregoing reasons I would uphold Slagle's convictions, vacate his death sentence, and remand this cause to the Cuyahoga County Court of Common Pleas for resentencing pursuant to R.C. 2929.06.

H. BROWN, J., concurs in the foregoing dissenting opinion.