JOURNAL ENTRY and OPINION
Appellant William Dowdell appeals from the trial court's decision finding him guilty of robbery under R.C. 2911.02(A)(2). The charge results from Dowdell allegedly inflicting bodily harm upon Brett Young, a Wal-Mart security officer, while attempting to leave Wal-Mart after he stole a package of Duracell batteries. Dowdell assigns the following errors for our review:
 I. WILLIAM DOWDELL WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE REPEATED MISCONDUCT OF THE PROSECUTORS IN HIS TRIAL.
 II. WILLIAM DOWDELL WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WHEN COUNSEL FAILED TO OBJECT TO THE REPEATED PROSECUTORIAL MISCONDUCT AND WAIVED THIS ISSUE ON APPEAL.
 III. WILLIAM DOWDELL'S CONVICTION FOR ROBBERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Having reviewed the record and legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
Appellee State of Ohio presented two Wal-Mart employees, Bret Young and Stephen Walters, and the North Olmsted officer, Robert Briesath, as witnesses. Their cumulative testimony creates the following account. On August 9, 1999, Bret Young, a Wal-Mart security officer, observed two camcorder batteries in Dowdell's shopping basket. Because these batteries are high-theft items, Young followed Dowdell. After moving into an aisle, Dowdell ripped open a package of Duracell Ultra batteries that was also in his shopping basket. Some of these batteries fell to the floor. Dowdell retrieved the batteries and placed them into the left front area of his person. He discarded the battery packaging and the attached anti-theft device in the aisle. Young did not immediately retrieve the empty package because he did not want to break surveillance of Dowdell. The packaging was never recovered because the area where Dowdell discarded the packaging was routinely cleaned soon thereafter. Dowdell returned to the electronics section several times before leaving his basket in the sporting goods section. Eventually, Dowdell passed through the register area and exited Wal-Mart without having paid for the Duracell Ultra batteries still on his person.
At this point, Young confronted Dowdell. Young identified himself as a Wal-Mart employee and asked Dowdell to return to the store to discuss a loss prevention matter. Dowdell denied stealing anything and continued walking away. Young put his arm in front of Dowdell and asked him to return to the store. Again Dowdell continued walking away. For a second time, Young put his arm in front of Dowdell. This time Dowdell said, Get out of my face and pushed Young away. Young told Dowdell that he had to stop. Again Dowdell pushed Young. Young grabbed Dowdell's arm and attempted to walk Dowdell back to the store, however, Dowdell resisted and swung Young into a concrete pillar. At this point, Stephen Walters and Kevin Cooney, Wal-Mart employees who had observed the confrontation, came to Young's aid. Walters pushed Dowdell to the ground and held him there with Cooney's help. Then, because Dowdell complained of a heart condition and trouble breathing, Walters and Cooney released Dowdell. When Dowdell regained his feet, he lit a cigarette and began to walk away. At some point during this confrontation, Dowdell dropped a Duracell Ultra battery which Young retrieved.
When the North Olmstead police arrived, Officer Robert Briesath searched Dowdell. He found nothing in Dowdell's pant pockets, but discovered eleven Duracell Ultra batteries in a waist pouch that hung in front of Dowdell. These batteries matched the battery Dowdell dropped during the altercation. Although Dowdell said that he had bought these batteries the previous day at Best Buy, Officer Briesath arrested Dowdell for robbery.
The next day, Dowdell delivered a Best Buy receipt for a twelve pack of Duracell batteries to the police station. Consistent with Dowdell's earlier statement to Officer Briesath, the receipt was dated the day before the incident at Wal-Mart. However, the receipt evidenced purchase of regular Duracell batteries, rather than the Duracell Ultra batteries found on Dowdell at Wal-Mart.
Dowdell's testimony differs strikingly from that of the Wal-Mart employees and Officer Briesath. According to Dowdell, he did not leave Wal-Mart with anything that he did not take in with him. He stated that Young jumped in front of him without cause as he was leaving the store, and put his hand on his chest. Dowdell tried to explain that he left all unpurchased items inside the store and was just going to his car for some money. Young responded, I'm not going to play with you and swung his right fist at Dowdell. Dowdell testified that Young's rash treatment came within just a few seconds of when Young first approached Dowdell. At this point somewhere between three and eight teenagers wrestled Dowdell to the ground. About five minutes later the police arrived and searched Dowdell. According to Dowdell, the police did not find the batteries on him, rather they got the batteries from Young who had taken the batteries from Dowdell before the police arrived.
Dowdell, in his first assigned error, alleges three incidences of prosecutorial misconduct that denied him a fair trial. First, while cross-examining Dowdell, the prosecution presented him with a prior statement he made to the police which read in part, I was stopped by eight teenagers and one man, who asked me to return to the store. * * * [Young] put his hands on my chest to grab me. I tried to walk around him and all eight of them threw me to the ground. The prosecution attempted to contrast this statement with Dowdell's in court testimony that Young swung at him and only three guys jumped on his back. While pressing Dowdell to explain the inconsistencies, the prosecution asked Dowdell, So were you lying then or are you lying now? Second, the prosecution inquired whether Dowdell lit a cigarette after the Wal-Mart employees let him walk away. Dowdell denied lighting a cigarette. The prosecution then asked him, Those other people are lying, and you are telling us the truth; is that what you want us to believe? Third, during closing arguments, the prosecution stated, I would ask you to think about also, folks, the fact that [Dowdell] lied to the police. The prosecution was referring to the Best Buy receipt Dowdell brought to the police which turned out to be for different batteries than those taken from Wal-Mart. Dowdell's counsel did not object to any of these three comments.
When counsel does not object to specific conduct at trial, and then assigns such conduct as error, our standard of review is plain error. See, State v. Green (2000), 90 Ohio St.3d 352, 373, 738 N.E.2d 1208,1231, citing State v. Wade, 53 Ohio St.2d 182, 373 N.E.2d 1244, paragraph one of the syllabus; Crim.R. 52(B). In determining plain error, we examine all properly admitted evidence and determine whether the jury would have convicted Dowdell even if the alleged error had not occurred. See, State v. Slagle (1992), 65 Ohio St.3d 597, 605, 605 N.E.2d 916,925. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus.
None of the three incidents of alleged misconduct rise to plain error. Dowdell asserts that the first incident informed the jury that the prosecution believed Dowdell was lying, and the second instance of alleged prosecutorial misconduct improperly forced Dowdell to either recant his testimony or call the State's witnesses liars. Further, Dowdell asserts that the prosecutor's alleged misconduct during closing argument equated to calling Dowdell a liar. We find no merit in any of these arguments. Because Dowdell failed to object to these statements at trial, whether the statements were improper is not our query. We are solely concerned with whether the jury would have convicted Dowdell even if the alleged errors had not occurred. See, State v. Slagle (1992), 65 Ohio St.3d 597,605, 605 N.E.2d 916, 925. The prosecution presented sufficient evidence to establish every element of robbery beyond a reasonable doubt. Further, Dowdell did nothing to disturb the credibility of Young, a professional security officer, Officer Briesath, an on-duty police officer, or Walters. We conclude that neither individually nor in the aggregate did these comments affect the outcome of this trial. Accordingly, we overrule Dowdell's first assigned error.
Dowdell, in his second assigned error, asserts his trial counsel rendered ineffective assistance by failing to object to the alleged prosecutorial misconduct discussed above. In order to prevail on a claim of ineffective assistance of counsel, Dowdell must show that trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by trial counsel's performance. State v. Madrigal (2000), 87 Ohio St.3d 378, 397, 721 N.E.2d 52, 70, reconsideration denied (2000), 88 Ohio St.3d 1428, 723 N.E.2d 1115, citing Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258,111 L.Ed.2d 768. An essential element of an ineffective assistance of counsel claim is a showing that, but for trial counsel's alleged errors, there is a substantial probability that the outcome of the trial would have been different. State v. Lindsey (2000), 87 Ohio St.3d 479, 489, 721 N.E.2d 995,1007, reconsideration denied (2000), 88 Ohio St.3d 1438, 724 N.E.2d 812.
Again, we are not required to decide whether these comments were improper or whether Dowdell's counsel should have objected. Rather, we are concerned with whether Dowdell's counsel, by not objecting, performed below an objective standard of reasonableness, and as a consequence, the jury would not have convicted Dowdell of robbery. Even if we assume the comments were improper, and reasonable counsel would have objected, we do not recognize a substantial probability that the outcome of the trial would have been different if Dowdell's counsel proffered objections that were sustained by the trial court. Accordingly, we overrule Dowdell's second assigned error.
Dowdell, in his third assigned error, asserts the trial court erred by finding him guilty counter to the manifest weight of evidence presented against him. When an appellant challenges a conviction on manifest weight grounds, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983),20 Ohio App.3d 172,175, 485 N.E.2d 717,720, citing Tibbs v. Florida (1982), 457 U.S. 31, 38, 42. See, also, State v. Thomkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. We will not reverse Dowdell's robbery conviction if there is substantial evidence upon which the trial court reasonably concluded that all the elements of robbery were proved beyond a reasonable doubt. See State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
Robbery is defined in R.C. 2911.02. It reads:
 (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
* * *
 (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 (B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree.
In this case, Young, a Wal-Mart security officer, testified he saw Dowdell rip open a package of Duracell Ultra batteries, place the loose batteries on his person, and exit Wal-Mart without paying for the batteries. Young further testified that he calmly confronted Dowdell who responded with belligerence and violence in his attempt to flee. Officer Briesath testified that he found eleven Duracell Ultra batteries in Dowdell's pouch which hung in front of Dowdell's waist, and he received one matching battery from Young. This testimony corroborates Young's testimony that Dowdell placed batteries into the left front area of his person and that the batteries stolen were a twelve-pack of Duracell Ultras. Officer Briesath also testified that Dowdell told him he bought the batteries in question at Best Buy the day prior to arrest, but the receipt Dowdell provided as proof, evidenced purchase of regular Duracell batteries rather than the batteries in question. Dowdell testified that he did not take anything from Wal-Mart and that he did not do anything to instigate a physical confrontation with Young. In fact, he asserted that Young was the one responsible for the altercation between them. Stephen Walters, another Wal-Mart employee present during the confrontation between Dowdell and Young, refuted Dowdell's testimony and corroborated Young's testimony.
Adhering to our standard of review, we conclude the jury did not clearly lose its way or create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Accordingly, Dowdell's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 __________________________ PATRICIA ANN BLACKMON, J.:
MICHAEL J. CORRIGAN, P.J., and ANN DYKE, J., CONCUR.