Defendant-appellant, William Terry Black, appeals the jury verdicts entered in the Mahoning County Court of Common Pleas finding him guilty of complicity to commit involuntary manslaughter and complicity to commit felonious assault, with attendant firearm specifications. For the reasons set forth below, appellant's convictions are affirmed.
 I. STATEMENT OF FACTS
On August 15, 1994, Patricia Cross, Daniel Thomas, and appellant, all of whom were acquaintances, were at a store together where Mr. Thomas purchased a beer for appellant. The three walked back to Mr. Thomas's apartment together. As Ms. Cross and Mr. Thomas went into the apartment, appellant left in a car that was waiting for him.
The following rendition of events is a summary of Ms. Cross's testimony: Later that evening, Ms. Cross and Mr. Thomas heard appellant tapping on Mr. Thomas's window. Mr. Thomas went to let appellant in and returned with appellant and an unidentified man ("the gunman") who was holding a gun to Mr. Thomas's head. The gunman demanded money and ordered Ms. Cross and Mr. Thomas into the bedroom. Appellant told the gunman that, earlier in the day, he saw Mr. Thomas's money in a brown envelope. Mr. Thomas explained that he had no money remaining after he purchased the beer for appellant at the store. As the gunman held his gun on the victims, appellant began removing and emptying dresser drawers. Ms. Cross "pushed" $15.00 out of her pocket which the gunman retrieved. Appellant asked for the gun, but the gunman did not give it to him. Appellant hit Ms. Cross and successfully ordered the gunman to hit Mr. Thomas. Appellant told the victims that he was going to let them go this time and told the gunman to shoot Mr. Thomas in the leg.
The gunman shot Ms. Cross four times and Mr. Thomas three times. Mr. Thomas died from a gunshot wound to his chest shortly thereafter. Appellant was arrested the next day and subsequently indicted for complicity to commit aggravated murder and complicity to commit felonious assault, each with firearm specifications attached. A charge of aggravated burglary was added by a superseding indictment. A jury trial commenced, the aggravated murder charge was reduced to murder, and the superseding aggravated burglary indictment was dismissed.
At trial, appellant testified that, as he arrived at Mr. Thomas's apartment, the gunman robbed him of $7.00, made him knock on Mr. Thomas's window, and forced him into the bedroom with Mr. Thomas and Ms. Cross. Appellant claims that he escaped as the gunman began shooting and that he never called the police because he feared for his life.
On November 29, 1994, the jury found appellant not guilty of complicity to commit murder, but guilty of the lesser included offense of complicity to commit involuntary manslaughter against Mr. Thomas. The jury also returned guilty verdicts on complicity to commit felonious assault against Ms. Cross and on both firearm specifications.
Appellant was sentenced to five to twenty-five years for the involuntary manslaughter conviction and three to twenty-five years for the felonious assault conviction, both with three extra years of actual incarceration for the firearm specifications. The within appeal followed.
 II. ASSIGNMENTS OF ERROR\
Appellant sets forth four assignments of error on appeal. The first three assignments pertain to defects in the trial court's previously uncontested jury instructions. Because appellant failed to object to the jury instructions at trial, any flaws were waived absent plain error. See State v Underwood (1983),3 Ohio St.3d 12. See, also, Crim.R. 30(A), 52(B). A plain error is one that is outcome determinative, i.e., but for the error, the outcome of the trial would have been different. State v.Long (1978), 53 Ohio St.2d 91. In order to hold that the trial court's jury instructions constituted reversible or plain error, we must determine that the errors alleged by appellant resulted in a clear miscarriage of justice. Id. at 94 (stating that a reviewing court should use great caution and reverse on grounds of plain error only in exceptional circumstances).
Appellant's first assignment of error contends:
 "The trial court erred in failing to properly define for the jury the intent element in the second count of the indictment, complicity to commit felonious assault."
Appellant was convicted of complicity to commit felonious assault under R.C. 2903.11(A)(2). The elements of the felonious assault applicable to the case at bar are (1) knowingly (2) causing or attempting to cause physical harm to another (3) by means of a deadly weapon. The complicity statute provides in pertinent part, "No person, acting with the kind of culpability required for the commission of an offense, shall * * * Aid or abet another in committing the offense." R.C. 2923.03(A)(2). Read together these statutes prohibit knowingly aiding or abetting another in physically harming a victim with a deadly weapon.
Appellant alleges that the trial court committed plain error when it listed "knowingly" as an element of felonious assault without defining it. When certain terms are specifically defined in a statute, the better practice is for the court to instruct on the specific definitions. In the portion of the charge instructing on complicity to murder, the court defined the element of purposely, which implies that the court was aware that it is appropriate to define any applicable mental states. Still, the court failed to define knowingly. While we concede that the trial court should have defined "knowingly" for the jury (see Ohio Jury Instruction 409.11, and State v.Mitchell (1989), 60 Ohio App.3d 106), we are not convinced that plain error is the inevitable result of a failure to do so. A trial court's omission such as this one does not per se
constitute plain error. See State v. Adams (180), 62 Ohio St.2d 151,154. Therefore, we must determine whether the failure to define "knowingly" constitutes plain error in that the jury would not have found appellant guilty of complicity to commit felonious assault but for the omission.
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). If the court would have included this definition in the jury charge, it is not clear that the jury would have found appellant not guilty of complicity to commit felonious assault.
Decisions on witness credibility are primarily for the jury.State v. DeHass (1967), 10 Ohio St.2d 230, 231. If the jury believed Ms. Cross when she testified that appellant instructed the gunman to shoot Mr. Thomas in the leg, then they could properly find that appellant was aware that his conduct would probably encourage the gunman to commit felonious assault against Mr. Thomas.
Appellant's mental culpability as it relates to Mr. Thomas will transfer to Ms. Cross, who sat on the bed next to Mr. Thomas during the robbery. "The doctrine of transferred intent is firmly rooted in Ohio law." State v. Sowell (1988), 39 Ohio St.3d 322,332. Under this doctrine, the jury could reasonably find that appellant's directive to the gunman to shoot Mr. Thomas in the leg sufficiently proves the mental state of knowingly as applied to Ms. Cross.
Accordingly, we cannot say that, but for the omission of the definition of knowingly from the jury instructions, the outcome of the trial clearly would have been different. Therefore, appellant's first assignment or error is overruled.
Appellant's second assignment of error states:
 "The trial court erred in failing to define proximate causation for the jury in connection with the charge of complicity to commit involuntary manslaughter."
Involuntary manslaughter, as applicable to the present case, is defined as causing the death of another as a proximate result of committing a felony. R.C. 2903.04(A). Appellant contends that the trial court committed reversible error by failing to define the phrase "proximate result" in the jury instructions.
In State v. Slagle (1992), 65 Ohio St.3d 597, 608, the Court held that the following instruction was sufficient: "Involuntary manslaughter is causing the death of another as a proximate result of committing or attempting to commit a felony." This is the same instruction given by the court in the case sub judice. Slagle is not directly on point because Slagle wanted a more detailed instruction so that the jury would
possibly convict him of involuntary manslaughter instead of murder, where as, in the case at bar, appellant wants a more detailed instruction so that a jury will not convict him of involuntary manslaughter. However, Slagle is instructive on the issue of whether a simple reading of the elements of involuntary manslaughter is sufficient.
As explained in the analysis under appellant's first assignment of error, we prefer jury instructions which define the elements of offenses, especially when those elements have legal definitions. Terms of common usage need not be defined.State v. Riggins (1986), 35 Ohio App.3d 1, 8. The element of proximate result is not extremely common, but it does have a lay definition, which is: the outcome that immediately follows an event. Webster's Ninth New Collegiate Dictionary (1987) 949. The legal definition of proximate result is: something that occurs in a natural and continuous sequence or something that would not have occurred but for an act. See Ohio Jury Instruction 503.04, dealing with proximate result as it relates to involuntary manslaughter. Comparing these definitions, it seems that the court's failure to define proximate result was not prejudicial under the facts of this case.
Even if the jury instructions contained a legal definition of proximate result, it is not clear or even likely that a jury would find that the felonious assault of Mr. Thomas by gunshot wounds was not the proximate result of his death. Accordingly, appellant's second assignment or error is overruled.
Appellant's third assignment of error alleges:
 "The trial court erred in its instructions to the jury regarding accomplice liability."
Appellant contends that it was plain error for the trial court to fail to clarify its complicity instructions after receipt of a question from the jury during its deliberation wherein the jury spokesperson stated, "Well, the question was the entire area as far as aiding and abetting, and when you read that to us what that all involved." (Tr. 524). Appellant states that the court should have read R.C. 2923.03 which prohibits aiding or abetting another in committing a crime with the same mental state as is required for such crime. Instead, the court repeated the portion of the instruction which stated, "one who aids or abets another in the commission of an offense may be prosecuted the same as if he was the principal offender." (Tr. 525). The court previously defined aid as "to help, assist, or strengthen" and abet as "to encourage, console, incite, or assist." (Tr. 508).
Appellant alleges that the jury may have thought that there was no intent element for complicity. However, by stating that an aider and abetter may be prosecuted the same as if he was the principal offender and then reciting the elements involved in the principal offense, one of which is culpability, the court's instruction was adequate; although not recommended.
Moreover, even if the court had given a more detailed explanation of aiding and abetting, we cannot declare that it is clear that defendant would have been acquitted. Whether or not appellant was the gunman's accomplice was basically a credibility issue, appellant's credibility versus Ms. Cross's. Ms. Cross testified that appellant told the gunman to shoot Mr. Thomas in the leg. If believed, this statement constitutes complicity. The resolution of such a contradiction in testimony is predominately the province of the jury. DeHass, supra.
Despite the fact that the more appropriate action by a jurist would have been to better clarify the jurors' question, plain error is not apparent. Accordingly, under the specific facts in the case at bar, appellant's third assignment of error is overruled.
Appellant's fourth and final assignment of error provides:
 "The trial court erred in failing to grant defendant's motion for mistrial, and in failing to issue a disregard instruction, based upon prosecutorial noncompliance with Mahoning County Common Pleas Court Criminal Rule 9(B)."
Local Rule 9(B) states that the information packet given to the defense by the prosecutor must include the names and addresses of all witnesses. Ohio Crim.R. 16(B)(1)(e) states that the prosecutor must supply the defendant with the names and addresses of only those witnesses whom the prosecutor intends to call to the stand. Appellant argues that Loc.R. 9(B) is stricter than Crim.R. 16(B)(1)(e) and requires disclosure of all possible witnesses known by the prosecutor, whether or not the prosecutor will call such witnesses.
Appellant points to the excerpt in the transcript where the prosecutor asked appellant on cross-examination if his cousin, Damian Urby, was the gunman (Tr. 412) and urges us to take notice of plain error in that Mr. Urby was not disclosed on the prosecutor's witness list. The prosecutor states that appellant's attorney raised the issue of appellant's cousin when he asked a police officer and Ms. Cross if Ms. Cross originally told the police that appellant robbed her with his cousin and an unidentified man. (Tr. 215, 267).
Mahoning County's Loc.R. 9(B) is written so that its plain meaning places more stringent disclosure requirements upon the prosecutor than does Ohio's Crim.R. 16. However, even though the prosecutor had the duty to disclose Mr. Urby's name and address in the discovery packet, the court correctly ruled that the omission of and subsequent reference to Mr. Urby's name did not prejudice appellant.
Mr. Urby is appellant's cousin. It was appellant's attorney who first alluded that the cousin was a possible witness or accomplice. Accordingly, inclusion of Mr. Urby's name in the prosecutor's discovery information packet would not have benefitted appellant in preparation of his defense. SeeState v. Heinish (1990), 50 Ohio St.3d 231, 236. Furthermore, because his own counsel raised the issue, the prosecutor's mention of Mr. Urby did not prejudice appellant. Appellant's fourth assignment of error is overruled.
For the foregoing reasons, the judgment of the trial court is affirmed.
Hon. Joseph J. Vukovich, Hon. Gene Donofrio, Hon. Cheryl L. Waite, JUDGES.
Donofrio, P.J., concurs.
Waite, J., concurs.
APPROVED:
 ------------------------- JOSEPH J. VUKOVICH, JUDGE