Appellant-defendant Cedric D. Wynn appeals his conviction for complicity in the conveyance of prohibited items onto the grounds of a detention facility in violation of R.C. 2923.03(A)(1). This Court affirms.
 I.
Janet Noble was Wynn's girlfriend. Noble and Wynn met through correspondence while Wynn was incarcerated in the Lorain Correctional Institution ("LCI") on another conviction. While Wynn was incarcerated, Noble and Wynn remained in contact through visitation and telephone calls. During one of their telephone conversations, Wynn told Noble that a woman would be contacting her about bringing something into LCI for Donald Hill, an old friend of Wynn's who was also incarcerated in LCI. Sometime thereafter, Noble was contacted by Hill's girlfriend Desiree. On December 6, 1996, Desiree gave Noble $200 and some heroin wrapped in plastic that was to be given to Wynn during a visit that was scheduled for the next day.
While all of this was occurring, an investigator at LCI was warned by a confidential informant that Wynn was planning to have someone from outside LCI bring him drugs during an upcoming visitation. Based on this information, the investigator examined Wynn's visitation records and noted that Noble had visited Wynn on thirty-four of Wynn's thirty-six visits. On December 6, 1996, the investigator monitored a telephone call between Wynn and Noble. During this telephone conversation, Wynn stated that he had run into Hill in the yard and asked Noble if anyone had contacted her yet. Noble said no. Wynn then asked Noble if anyone had given her anything. Again, Noble answered no. Wynn responded that that was good and that this was not going to happen again. Wynn and Noble contacted each other by telephone three or four other times that night and early into the next day. At some point, Wynn arranged a three-way telephone call between himself, Noble, and Desiree. Based on all of this information, the investigator decided to search Noble when she came to visit the next day.
The next morning, Noble went to LCI for visitation with the heroin concealed in her underwear. The investigator ushered Noble into a private room and asked her some questions. The investigator then called in a female corrections officer to administer a strip search. Upon realizing that she was about to be strip searched, Noble became upset and indicated that she had drugs on her person. The heroin was quickly found and Noble was arrested. Although Noble initially asserted that Wynn knew nothing about the drugs, she later admitted in a written statement that Wynn had asked her to bring something in with her and that she was supposed to give the drugs to Wynn.
Based on this evidence, Noble was charged with conveying prohibited items onto the grounds of a detention facility in violation of R.C. 2921.36(C), and Wynn was charged with soliciting or procuring Noble to do so in violation of R.C. 2923.01(A)(1). Noble was convicted and was placed on probation. Wynn pled not guilty and was ultimately convicted based in part on the testimony of Noble. Wynn appeals.
 II.
Wynn's first assignment of error states:
 THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT ENTERED JUDGMENT OF CONVICTION WHERE SUCH JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The appropriate standard of review for a challenge to the weight of the evidence is set forth in State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
Wynn was convicted of soliciting or procuring Noble to convey heroin onto the grounds of a detention facility in violation of R.C. 2921.36(C) and R.C. 2923.03(A)(1). R.C. 2923.03 imposes liability for complicity as follows:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 (1) Solicit or procure another to commit the offense[.]
R.C. 2921.36(C) states that "[n]o person shall knowingly deliver, or attempt to deliver, to any person who is confined in a detention facility * * * any item listed in division (A)(1), (2), or (3) of this section." R.C. 2921.36(A)(2) prohibits the conveyance of any "drug of abuse." Thus, the prosecution was required to prove that Wynn knowingly solicited or procured Noble to deliver drugs to a person confined in LCI. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
Wynn argues that the evidence does not support a finding that he acted knowingly. In that regard, Wynn notes that Noble admitted that Wynn never actually asked her to bring drugs into LCI; Wynn merely introduced Noble to Desiree, who then asked Noble to bring drugs into LCI and give them to Wynn. Wynn also notes that the LCI investigator admitted that the impression he got from the telephone call that he monitored between Wynn and Noble was that Wynn did not want to have Noble carrying drugs anymore. Additionally, Wynn submitted an affidavit that Noble had signed just prior to her own conviction stating that Wynn had advised her to refuse Desiree's request and not to bring drugs into LCI and that Wynn was not aware that Noble was bringing drugs into LCI. Wynn testified that he did not know that Noble was bringing drugs into LCI and that he had told her not to do so.
However, the jury also heard the LCI investigator testify that prisoners know that their telephone calls are monitored so they develop codes for speaking on the telephone. One of the more common codes employed by prisoners is to say the opposite of what they mean. Therefore, "yes" becomes "no." Another common code is to refer to drugs as clothing. In that regard, Wynn admitted that he did ask Noble to bring him a new pair of shoes. Wynn testified that once he received his new shoes from Noble, he was planning to give his old shoes to Hill. Wynn explained that he had arranged for Desiree to meet with Noble, because Hill had promised to have Desiree pay Noble for Wynn's old shoes.
While the evidence clearly shows that Wynn had arranged for Desiree and Noble to meet prior to Noble's scheduled visit, the evidence is not so clear as to whether Wynn was aware that Noble was probably bringing him drugs. Nevertheless, this Court cannot say that the jury clearly lost its way in resolving the conflicting testimony and thereby created a manifest miscarriage of justice. Wynn's "tennis shoes" explanation for his role in procuring Noble's cooperation was dubious at best, and the jury could easily have inferred that Wynn knew what was actually going on when he arranged for Desiree and Noble to meet. Wynn's first assignment of error is not well taken.
 III.
Wynn's second assignment of error states:
 THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE BY FAILING TO CHARGE THE JURY ON ACCOMPLICE TESTIMONY PURSUANT TO OHIO REVISED CODE 2923.03 (D)[.]
Wynn concedes in his brief that he failed to object to the jury instructions. As such, under Crim.R. 30(A), Wynn has waived all but plain error. Plain error has been defined as "an obvious error which is prejudicial to an accused, * * * which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings." State v. Craft
(1977), 52 Ohio App.2d 1, paragraph one of the syllabus. In Statev. Slagle (1992), 65 Ohio St.3d 597, the Ohio Supreme Court established a method for assessing plain error:
 One question a reviewing court must ask is whether the alleged error substantially affected the outcome of the trial. The appellate court must examine the error asserted by the defendant-appellant in light of all of the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred.
Id. at 604-605.
When an accomplice testifies against a defendant, R.C.2923.03(D) requires the trial court to instruct the jury substantially as follows:
 The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.
It is undisputed that the trial court failed to give the R.C.2923.03(D) instruction.
After reviewing all of the evidence, this Court concludes that the failure to give the R.C. 2923.03(D) instruction did not substantially affect the outcome of the trial. On cross-examination, Wynn's attorney had ample opportunity to attack Noble's credibility and give the jury reason to view Noble's testimony with suspicion. In fact, Wynn's attorney clearly highlighted the fact that Noble had only been sentenced to probation for her role in the affair, despite two prior drug convictions. Additionally, Noble's testimony was generally favorable to Wynn. Noble admitted that Wynn never explicitly requested that she bring drugs into LCI for him, and she stated that everything in the affidavit that was presented by the defense was true. Noble also testified that she had apologized to Wynn for implicating him. As such, it may not have been helpful to reduce Noble's credibility any further.
In summary, the jury had ample reason to view Noble's testimony with suspicion and, regardless, Noble's testimony was as helpful as it was harmful. Therefore, the trial court's failure to give an R.C. 2923.03(D) instruction will not have a substantial adverse impact on the integrity of and public confidence in judicial proceedings. Wynn's second assignment of error is not well taken.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Lorain County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
BAIRD. P.J. and MAHONEY, J. CONCUR.
(Mahoney, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)