JOURNAL ENTRY AND OPINION
I. FACTS AND PROCEDURAL HISTORY On September 18, 1987, defendant-appellant, Billy Joe Slagle, Jr., was indicted by the Cuyahoga County Grand Jury on one count of aggravated murder with three death penalty specifications, one count of aggravated burglary, one count of aggravated robbery and one count of attempted rape.
Appellant's trial commenced on February 25, 1988. As set forth by the Supreme Court of Ohio in State v. Slagle (1992),65 Ohio St.3d 597, 598-599, the following evidence was adduced at trial:
 In the early morning hours of August 13, 1987, the victim Mari Anne Pope was awakened in her home by appellant. Two children, who she had agreed to watch for her neighbors, were also awakened. The children awoke to the voice of Mari Anne inquiring as to who this person was that had entered her home. A man's voice angrily threatened her and ordered her to roll onto her stomach. The man asked if there were others in the house, to which she replied that there were two children upstairs. The man told the victim not to move and that he had a knife at her back. The children then heard Mari Anne begin to pray. The man responded by ordering her to stop praying.
The children recognized the voice and knew the man as Billy Slagle, who lived next door. They first sought to hide, and then to escape. They scurried through the hall and out the back door. One of the children looked into the bedroom and observed Slagle sitting on top of the victim, who was lying upon her stomach. Slagle had on only his underwear. As the children exited, the victim could be heard screaming.
The children were admitted into a neighbor's home and police were called. Police officers arrived momentarily and as they moved around the house, shining a flashlight into the windows, one officer observed a man standing in the rear bedroom. The officer entered and observed appellant attempting to hide in the dining room, armed with blood-covered scissors. After ordering appellant to discard the scissors and lie face down on the floor, the officer placed handcuffs on him.
The officer then went into the bedroom. He observed Mari Anne Pope lying across the middle of the bed. Her nightgown was pulled up around her neck. She was drenched in blood with large holes in her body. On the floor lay Mari Anne's broken rosary, and appellant's tank-top T-shirt.
The officer called to his companion, telling him to call for medical treatment and to take custody of the handcuffed man on the dining room floor. The other officer responded that there was no one on the dining room floor and both officers began to search. Appellant had gotten up and hidden himself in a hallway closet. When the officer passed the closet door in this as yet darkened home, appellant burst from the closet and sought to escape. The first officer to react testified that appellant was very quick and agile. The officer was unable to subdue appellant until two other officers entered the fray. Appellant was observed to have blood on his hands and clothing. He also had a number of superficial scratches and bruises.
Despite efforts to save her, Mari Anne Pope was pronounced dead at 6:00 a.m. The coroner reported that she had been stabbed seventeen times, with many of the stab wounds having been inflicted in and around her chest area. There were four stab wounds in her abdomen, five in the upper and lower extremities, with eight to the chest area, including wounds to the right atrium, pulmonary artery and right lung. She had also been severely beaten about her head and face.
At 10:00 a.m. the same day, Detective John J. McKibben interviewed appellant, after having first advised him of hisFifth Amendment rights. At first, appellant claimed to have no knowledge of the events of that morning. After being reminded that he had been arrested in the victim's home, appellant described his actions on the night of August 12 and the morning of August 13 in some detail.
The jury returned its verdict on March 13, 1988, finding appellant guilty of aggravated murder, aggravated burglary and aggravated robbery. The jury found appellant not guilty of attempted rape.
On April 5, 1988, the sentencing phase of appellant's trial began. On April 7, 1988, the jury recommended a sentence of death. On April 14, 1988, the trial court sentenced appellant to death on the aggravated murder charge. The trial court also sentenced appellant to concurrent terms of ten to twenty-five years of actual incarceration for his convictions of aggravated burglary and aggravated robbery.
On May 20, 1988, appellant filed a notice of appeal to this court, presenting twenty-five assignments of error for our review. On June 14, 1990, this court affirmed appellant's conviction and sentence of death. State v. Slagle (June 14, 1990), Cuyahoga App. No. 55759, unreported. The Ohio Supreme Court subsequently affirmed appellant's conviction and death sentence on December 31, 1992. State v. Slagle (1992), 65 Ohio St.3d 597.
On February 10, 1993, the Ohio Supreme Court denied appellant's motion for rehearing. The United States Supreme Court denied appellant's petition for certiorari on October 4, 1993.
This court subsequently denied appellant's application for reopening and on July 19, 1995, the Ohio Supreme Court affirmed the decision of the Court of Appeals. State v. Slagle (1995),72 Ohio St.3d 509. On March 26, 1996, appellant filed a motion for reconsideration in the Ohio Supreme Court. The court denied appellant's motion on May 8, 1996.
On May 17, 1996, appellant filed an amended petition to vacate or set aside judgment[1] in the trial court, raising sixty-three claims for relief.[2] On July 21, 1999, the trial court issued its findings of fact and conclusions of law.[3] The trial court denied appellant's amended petition without an evidentiary hearing, finding that all of appellant's claims were barred by the doctrine of res judicata.
Appellant appealed the trial court's judgment denying his petition for post-conviction relief, raising seventeen assignments of error for our review.[4]
II. ASSIGNMENT OF ERROR ONE
In his first assignment of error, appellant contends that the trial court committed reversible error in dismissing his petition without first conducting an evidentiary hearing. It is well settled, however, that a hearing is not automatically required whenever a petition for post-conviction relief is filed. State ex rel. Jackson v. McMonagle (1993), 67 Ohio St.3d 450; State v. Strutton(1988), 62 Ohio App.3d 248, paragraph one of the syllabus. The pivotal concern is whether there are substantive constitutional grounds for relief which would warrant a hearing based upon the petition, the supporting affidavits and materials, and the files and record of the cause. State v. Jackson (1980), 64 Ohio St.2d 107,110; Strutton, supra. A petitioner is entitled to post-conviction relief under R.C. 2953.21 only if the court can find that there was such a denial or infringement of the petitioner's rights as to render the judgment void or voidable under the Ohio or United States Constitutions. State v. Perry (1967), 10 Ohio St.2d 175, paragraph four of the syllabus. Where a petition for post-conviction relief fails to allege facts which, if proved, would entitle the petitioner to relief, however, the trial court may so find and summarily dismiss the petition. Perry, supra, paragraph two of the syllabus.
We conclude the trial court did not err in dismissing appellant's petition without holding an evidentiary hearing. A review of the petition, the supporting affidavits and other documentary evidence, the files and the record of the case leads this court to conclude that appellant has failed to raise a genuine issue of material fact that there are substantive constitutional grounds for relief. The deficiencies of appellant's claims are discussed in detail below in our analysis of appellant's other assignments of error.
Appellant's first assignment of error is overruled.
III. ASSIGNMENTS OF ERROR TWO THROUGH ELEVEN AND THIRTEEN THROUGH SIXTEEN
We will consider assignments of error two, three, four, five, six, seven, eight, nine, ten, eleven, thirteen, fourteen, fifteen and sixteen together because they raise the same issue: whether the trial court properly dismissed appellant's claims on the basis of res judicata. In these assignments of error, appellant contends that the trial court erred in dismissing his first, fourth, fifth, sixth, ninth, eleventh, fifteenth, twentieth, twenty-first, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-ninth, thirtieth, thirty-second, thirty-third, thirty-forth, fortieth, forty-fifth, forty-sixth, fifty-fourth, fifty-eighth, sixtieth, sixty-first and sixty-second claims for relief. We disagree.
Under the doctrine of res judicata, constitutional issues cannot be considered in post-conviction proceedings brought pursuant to R.C. 2953.21 where they have already or could have been fully litigated by the defendant, either before his judgment of conviction or on direct appeal from that judgment. Perry, supra at paragraph seven of the syllabus; State v. McCollough (1992),78 Ohio App.3d 587, 591. Issues properly raised in a petition for post-conviction relief are those which could not have been raised on direct appeal because the evidence supporting such issues is outside the record. State v. Milanovich (1975), 42 Ohio St.2d 46,50; State v. Durr (July 28, 1994), Cuyahoga App. No. 65958, unreported. If an issue has, or should have been, raised on direct appeal, the trial court may dismiss the petition on the basis of res judicata. State v. Spisak (Apr. 13, 1995), Cuyahoga App. No. 67229, unreported.
Because an appeal from the judgment of conviction is limited to the trial court record, a petition for post-conviction relief may defeat the res judicata bar if its claims are based on evidence outside the record. See State v. Cole (1982), 2 Ohio St.3d 112,113-114. New evidence attached to the petition for post-conviction relief, however, does not automatically defeat the res judicata bar. Evidence outside the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of Perry by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim[.] State v. Lawson (1995), 103 Ohio App.3d 307, 315, quoting State v. Coleman (Mar. 17, 1993), Hamilton App. No. C-900811, unreported. Moreover, the evidence dehors the record must not be evidence which was in existence and available for use at the time of trial and which could and should have been submitted at trial if the defendant wished to use it. Id.
Here, the trial court properly dismissed appellant's first, fourth, fifth, sixth, ninth, eleventh, fifteenth, twentieth, twenty-first, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-ninth, thirtieth, thirty-second, thirty-third, thirty-forth, fortieth, forty-fifth, forty-sixth, fifty-fourth, fifty-eighth, sixtieth, sixty-first and sixty-second claims for relief.
As noted by the trial court, appellant's first, fourth, fifth, sixth, ninth, eleventh and fifteenth claims of error were adjudicated by this court and, subsequently, the Supreme Court of Ohio, in appellant's direct appeal of his conviction. Accordingly, they are barred by the doctrine of res judicata. The remainder of the claims at issue could have been raised on direct appeal and, therefore, are also barred by the doctrine of res judicata.
Appellant's twenty-fourth and twenty-fifth claims for relief assert that appellate review was done from an incomplete record. These assertions do not depend on evidence dehors the record and could have been raised on appellant's direct appeal. Accordingly, the trial court properly dismissed them on the basis of res judicata. Furthermore, any claimed errors allegedly occurring during the appellate phase of the proceedings are barred pursuant to State v. Murnahan (1993), 63 Ohio St.3d 60.
Appellant's twenty-sixth claim for relief alleges that the prosecutor engaged in misconduct during the trial by improperly questioning witnesses and using leading questions to elicit character and victim impact evidence and other inflammatory testimony. To support this claim, appellant attached an affidavit from Nina Roseberry, a juror in appellant's trial, in which Ms. Roseberry averred that she does not understand the purpose of holding a trial when it is clear, such as in Billy Slagle's case, that the defendant is guilty of committing the murder, voted for the death penalty because the crime was particularly gruesome and appellant's attorneys could not have presented any mitigating circumstances that would have convinced her that appellant did not deserve the death penalty.
Appellant contends on appeal that the trial court improperly dismissed this claim on the basis of res judicata because the evidence demonstrating that he was prejudiced by the prosecutor's alleged misconduct was outside the record and, therefore, the claim could not have been raised on appellant's direct appeal. Appellant's claim is without merit.
Any alleged prosecutorial misconduct and resultant prejudice can be determined from the record. Therefore, this claim could have been raised on direct appeal and is now barred from consideration by application of the doctrine of res judicata. Moreover, even assuming for the sake of argument that appellant's claim of prosecutorial misconduct could not be determined from the record, it is not supported by any evidence dehors the record. There is nothing in Ms. Roseberry's affidavit to indicate that her opinions in this case were influenced whatsoever by the prosecutor's alleged misconduct. Accordingly, the trial court did not err in dismissing this claim.
Appellant's thirty-second claim for relief alleges that in the penalty phase of his trial, the state failed to prove that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt. Appellant alleges that because his counsel failed to present mitigation evidence that could have been presented, there was insufficient evidence to prove that the aggravating factors outweighed the mitigating factors beyond a reasonable doubt.
The trial court dismissed this claim on the basis of res judicata. Appellant contends on appeal, however, that the trial court erred in dismissing this claim on the basis of res judicata because the claim could not have been presented without resort to evidence dehors the record since the record does not disclose the type of mitigation evidence that could have been presented. Therefore, appellant argues, this claim could not have been raised on direct appeal. We disagree.
Contrary to appellant's argument, this claim can be determined from the record. Moreover, a post-conviction relief proceeding is not a civil re-trial of appellant's conviction. State v. Lott (Nov. 3, 1994), Cuyahoga App. Nos. 66388, 66389 and 66390, unreported. Appellant's attempt to have this court re-weigh the aggravating and mitigating factors and thereby retry his conviction and sentence through post-conviction proceedings is inappropriate and exceeds the parameters of R.C. 2953.21. See State v. Mitchell (1988), 53 Ohio App.3d 117.
Appellant's thirty-fourth and fortieth claims for relief generally challenge the imposition of appellant's death sentence as violating various provisions of the Ohio Constitution, the United States Constitution and various international laws and treaties to which the United States is a signatory nation. These systematic challenges to appellant's death sentence also do not depend on factual allegations or evidence dehors the record and are matters which could have been raised on direct appeal. Therefore, the trial court properly dismissed them without a hearing on the basis of res judicata.
Appellant's forty-fifth and forty-sixth claims for relief allege pretrial errors that allegedly deprived him of a fair trial. Specifically, appellant asserts that the grand jury was improperly constituted and that excessive media coverage deprived him of a fair trial. Appellant's claims regarding pre-trial error are barred by application of the doctrine of res judicata because these alleged errors could have been raised on direct appeal. Perry, supra at paragraph nine of the syllabus; Lott, supra. The evidentiary materials appellant submitted with his petition to support these claims for relief — a list of the grand jury members and various newspaper articles regarding the murder of Mari Anne Pope — add nothing to the substance of the arguments that could have been raised on direct appeal. Accordingly, the trial court did not err in dismissing these claims on the basis of res judicata.
Appellant's petition for post-conviction relief also sets forth various claims of ineffective assistance of counsel. In his twentieth, twenty-first, twenty-seventh, twenty-ninth, thirtieth and thirty-third claims for relief, appellant alleges that he was denied his constitutional right to effective assistance of counsel because his trial attorneys failed to object to errors during voir dire; failed to exercise peremptory challenges against biased jurors during voir dire; failed to question jurors as to their attitudes about mitigating factors; repeatedly conceded appellant's guilt of aggravated murder; improperly requested sanity and competency evaluations of appellant, even though neither of these issues was being raised by the defense; failed to obtain an independent pathologist; failed to object to improper comments in the state's closing argument and to improper instructions by the trial court; failed to request a continuance between the trial phase and penalty phase of appellant's trial; failed to interview most members of appellant's family for the mitigation phase of the trial; failed to obtain a social history and take measures to enhance and supplement the psychological analysis conducted by the mental health professionals; failed to procure a cultural expert; failed to hire a mitigation specialist even though the trial court had granted funds for same; waived opening argument during the mitigation phase and failed to provide expert witnesses with the background information necessary to adequately testify.
In order to establish ineffective assistance of counsel, a defendant must demonstrate this his counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011. Before a hearing is granted, the petitioner bears the initial burden in a post-conviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness. Jackson, supra at 111 (emphasis in original).
There are countless ways for an attorney to provide effective assistance in a given case and we must give great deference to counsel's performance. Strickland v. Washington (1984),466 U.S. 668, 689. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *. Id. Debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49, certiorari denied (1980), 449 U.S. 879. Within the purview of trial tactics is defense counsel's selection of witnesses to call at trial. State v. Coulter (1992), 75 Ohio App.3d 219, 230.
A review of the evidence dehors the record which appellant contends supports his claim of ineffective assistance of counsel reveals that appellant has failed to demonstrate that defense counsel breached an essential duty owed to appellant.
Initially, we note that the Ohio Supreme Court considered appellant's claim of ineffective assistance of counsel, although admittedly based on other alleged errors, and stated, Appellant's counsel were both qualified criminal defense lawyers and neither failed in any essential duty. We cannot hold that appellant's legal representation was inadequate. Slagle,65 Ohio St.3d at 610.
Moreover, the majority of appellant's arguments regarding the alleged ineffectiveness of his counsel could have been raised on direct appeal without resort to evidence outside the record and, therefore, were properly dismissed on the basis of the doctrine of res judicata.
With respect to appellant's arguments that, for various reasons, his counsel was ineffective during the mitigation phase of the trial, we note that during the penalty phase of the trial, appellant presented the testimony of Maureen Dee (a social worker), Dr. Isidore Helfand (a clinical psychologist), Dr. Peter Rogers (a pediatrician specializing in chemical dependency) and Dr. Kurt Bertshinger (a forensic psychiatrist). In addition, Michael Davis (a friend of appellant), Patricia Wakefield (appellant's mother), Billy Slagle, Sr. (appellant's father) and Lisa Slagle (appellant's sister) testified on appellant's behalf. Appellant also gave an unsworn statement on his own behalf. The testimony portrayed the dysfunction in appellant's family, his alcoholism and chemical dependency and his alleged remorse for the murder. The record demonstrates, therefore, that appellant's counsel had and presented a competent and meaningful theory of mitigation.
In support of the claims in his petition regarding ineffective assistance of counsel, appellant submitted affidavits from experts and family members, all of whom essentially reiterated the psycho-social and genetic factors already placed before, and rejected by, the courts. The additional evidence presented by appellant, therefore, is merely cumulative to that already presented at trial and, consequently, properly disregarded by the trial court on the basis of the doctrine of res judicata.
Finally, we note that many of appellant's claims regarding counsel's alleged ineffectiveness challenge counsel's strategy and tactical decisions. Judicial scrutiny of counsel's performance must be highly deferential, as it is all too tempting for a defendant to second-guess counsel's assistance after conviction. Bradley, supra. An attorney's strategic decisions will not be the subject of second-hand guessing by courts reviewing claims of ineffective assistance of counsel. Id. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, supra at 699. Strategy and tactical decisions employed and exercised by defense counsel which are well within the range of professionally reasonable judgment need not be analyzed by a reviewing court. Id.
Here, we conclude that nothing in the evidentiary materials, when considered against the entire record, raises an issue of fact that appellant was deprived of effective assistance of counsel during any phase of the trial. Accordingly, the trial court properly dismissed appellant's claims on the basis of res judicata.
Finally, appellant's petition also claims various errors relating to the jury instructions. In his fifty-fourth, fifty-eighth, sixtieth and sixty-first claims for relief, appellant contends that the trial court erred in instructing the jury that a life verdict must be unanimous, it could infer from appellant's use of a deadly weapon that he intended to cause the victim's death and it could consider any other factors that are relevant to whether the defendant should be sentenced to death, thereby inviting the jury to consider non-statutory aggravating factors. Appellant also contends that the penalty phase instructions created a mandatory presumption in favor of the death sentence. In support of his claims, appellant attached to his petition a linguistic analysis of the jury instructions, in which linguist Dr. Michael Geis concludes that the way the issue of death is framed in the jury instructions invariably communicated to the jury that death is the most important and preferred sentence and the trial court's jury instructions prejudiced appellant because they decreased the possibility that a life sentence would be returned, relieved the state of its burden to prove every element of appellant's guilt beyond a reasonable doubt and invited the jury to consider any fact as aggravating as long as the jury considered it relevant.
The trial court dismissed appellant's claims regarding the jury instructions, ruling that the claims should have been raised on direct appeal and, therefore, were barred by the doctrine of res judicata. Appellant contends on appeal, however, that the trial court erred in dismissing these claims because the evidence dehors the record attached to his petition demonstrates substantive grounds for relief. We disagree.
Appellant's evidence fails to demonstrate why his claims regarding alleged improper jury instructions could not have been raised at trial or on direct appeal. Because these claims should have been raised on direct appeal, the trial court properly dismissed them on the basis of res judicata.
Having found that the trial court properly dismissed appellant's claims on the basis of res judicata because they were or could have been raised on direct appeal, assignments of error two, three, four, five, six, seven, eight, nine, ten, eleven, thirteen, fourteen, fifteen and sixteen are overruled.
IV. ASSIGNMENT OF ERROR TWELVE
Appellant's sixty-second claim for relief alleges that the City of Cleveland failed to timely respond to his request, made pursuant to R.C. 149.43, Ohio's Public Records Act, to review and inspect public records relating to his arrest and prosecution for the aggravated murder of Mari Anne Pope. Appellant's claim asserts that the City's failure to disclose public records necessary for the preparation of his petition for post-conviction relief violated his due process rights as guaranteed by the Ohio and United States Constitutions.
The trial court found this claim barred by the doctrine of res judicata because it contained matters that should have been raised on direct appeal. In his twelfth assignment of error, appellant contends, however, that the trial court erred in dismissing this claim on the basis of res judicata because the claim did not even arise until after appellant's direct appeal had been taken.
We agree that the trial court erred in dismissing this claim on the basis of res judicata. Obviously, a claim that did not even arise until after the direct appeal could not have been raised on appeal. We do not agree, however, that appellant has presented sufficient evidence dehors the record in support of this claim to warrant an evidentiary hearing.
In support of his claim that the City failed to timely respond to his public records request, appellant attached copies of certified letters sent to the City of Cleveland Police Department and City of Cleveland Law Department requesting the records. Appellant also attached a copy of a fax transmittal letter from the City of Cleveland Police Department, in which the Police Department instructed appellant's counsel that appellant's public records request had been sent to the City of Cleveland Law Department and further instructed counsel to contact attorney Shawn Mallamad at 664-2917. Appellant did not attach an affidavit from himself or his counsel, however, indicating that counsel did, in fact, contact Mr. Mallamad and he refused to comply with their request.
Furthermore, we find that this claim is not appropriately raised in a petition for post-conviction relief. Mitchell, supra. R.C. 2953.21 provides a state remedy to attack a judgment of conviction where that judgment was based on a denial of a criminal defendant's constitutionally protected rights. Id. Challenging the failure of governmental unit to respond to a public records request exceeds the boundaries imposed by the legislature when it enacted R.C. 2953.21 et seq. Id. Indeed, appellant's remedy for the failure of a governmental unit to promptly prepare a public record and to make it available to the person for inspection, is a mandamus action to obtain a judgment ordering the City to comply with his public records request. See R.C. 149.43(C).
Because the evidence dehors the record attached to appellant's petition failed to demonstrate that appellant was entitled to relief, the trial court properly dismissed this claim without an evidentiary hearing.
Appellant's twelfth assignment of error is overruled.
V. ASSIGNMENT OF ERROR SEVENTEEN
In his seventeenth assignment of error, appellant asserts that R.C. 2953.21 and Ohio's post-conviction proceedings are unconstitutional because they do not provide an adequate corrective process. A review of the record reveals that appellant did not assert this claim in his petition for post-conviction relief nor did he raise this issue at the trial court level. Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of the petition for post-conviction relief, constitutes a waiver of such issue and, therefore, need not be heard for the first time on appeal. State v. Awan (1986), 22 Ohio St.3d 120. Because appellant did not raise this issue below, he waived it on appeal. Moreover, we note that R.C. 2953.21 has been held to be constitutional. State v. Skenlar (1991), 71 Ohio App.3d 444,449.
Appellant's seventeenth assignment of error is therefore overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
TIMOTHY E. McMONAGLE, JUDGE
TERRENCE O'DONNELL, P.J. and MICHAEL J. CORRIGAN, J., CONCUR.
 APPENDIX A I. THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S POST-CONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT AN EVIDENTIARY HEARING AND DISCOVERY.
 II. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S FIRST CLAIM FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 III. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S FOURTH CLAIM FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 IV. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S FIFTH CLAIM FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 V. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S SIXTH, NINTH AND FIFTEENTH CLAIMS FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 VI. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S ELEVENTH CLAIM FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 VII. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S TWENTY-SIXTH CLAIM FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 VIII. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S THIRTY-SECOND CLAIM FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 IX. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S FORTIETH CLAIM FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20
OF THE OHIO CONSTITUTION.
 X. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S FORTY-FIFTH CLAIM FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 XI. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S FORTY-SIXTH CLAIM FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 XII. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S SIXTY-SECOND CLAIM FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 XIII. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S TWENTIETH, TWENTY-FIRST, TWENTY-SEVENTH, TWENTY-NINTH, THIRTIETH, AND THIRTY-THIRD CLAIMS FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20
OF THE OHIO CONSTITUTION.
 XIV. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S TWENTY-FOURTH AND TWENTY-FIFTH CLAIMS FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 XV. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S THIRTY-FOURTH CLAIM FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 XVI. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S FIFTY-FOURTH, FIFTY-EIGHTH, SIXTIETH, AND SIXTY-FIRST CLAIMS FOR RELIEF IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 XVII. OHIO POST-CONVICTION PROCEDURES DO NOT AFFORD AN ADEQUATE CORRECTIVE PROCESS NOR DO THEY COMPLY WITH DUE PROCESS OR EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT.
 APPENDIX B 1. The trial court erred in overruling appellant's motion to suppress his confession.
 2. The prosecution's use of peremptory challenges to exclude jurors who expressed concerns about capital punishment violated appellant's right to a fair and impartial jury.
 3. The trial court erred by instructing the jury during voir dire as to the verdict necessary to capitally convict the accused.
 4. The trial court abused its discretion by allowing into evidence a series of gruesome photographs which contained little probative value.
 5. The evidence is constitutionally insufficient to sustain convictions of aggravated murder, aggravated robbery and aggravated burglary as appellant's state of intoxication rendered him unable to form the requisite culpable mental state.
 6. Prosecutorial misconduct during cross-examination of appellant deprived him of his right to due process of law.
 7. The trial court erred by granting the state's motion in limine to prevent defense experts from expressing an opinion on whether appellant was unable to form the specific intent to kill.
 8. The prosecutor improperly questioned defense experts regarding irrelevant issues of competency and sanity when these issues had not been raised by the defense.
 9. The prosecutor's closing argument was replete with improper comments which prejudicially affected substantial rights of appellant.
 10. The jury instructions failed to define the elements of voluntary manslaughter, thereby precluding the jury from considering an instruction on a lesser included offense.
 11. The trial court erroneously instructed the jury that appellant had stipulated guilt to a capital specification of the aggravated murder indictment.
 12. The trial court erred in not giving a limiting instruction that other acts must not be considered as any proof that the accused did any act alleged in the indictment.
 13. Defense counsel failed to object to erroneous jury instructions, to request proper jury instructions and placed irrelevant evidence before the jury.
 14. The submission of two allied statutory aggravating factors artificially inflated the aggravating circumstances.
 15. During the penalty phase of the trial, the prosecutor improperly addressed victim impact issues, introduced other acts evidence and referred to non-statutory aggravating factors.
 16. The trial court improperly instructed the jury that their decision in the penalty phase was a recommendation.
 17. The trial court improperly instructed the jury that the law provides for mitigating factors not proven in appellant's case.
 18. The trial court erroneously instructed the jury during the penalty phase that the jury's finding must not be solely based on sympathy.
 19. The trial court erred in finding state's witness Howard Bloxham competent to testify.
 20. Appellant's trial attorney's failed to effectively represent him during voir dire of prospective jurors.
 21. Appellant was deprived of effective assistance of counsel during the guilt/innocent phase of the trial.
 22. The trial court gave an improper instruction on reasonable doubt in both the guilt/innocence and penalty phases of appellant's trial.
 23. The trial court failed to adequately define the term outweigh in its sentencing instructions to the jury in the penalty phase.
24. The state failed to preserve the record in the case.
 25. The appellate review was done from an incomplete record.
 26. Prosecutorial misconduct in the improper questioning of witnesses included using leading questions to elicit victim character and impact evidence and other inflammatory testimony.
 27. Numerous errors by defense counsel denied appellant his right to effective assistance of counsel.
 28. The trial court erred when it instructed the jury that it could not deliberate on the lesser included offense until it found appellant not guilty of aggravated murder.
 29. Defense counsel failed to obtain a social worker to assist counsel in identifying, etc., witnesses for the mitigation phase of the trial.
 30. The trial court failed to grant defense counsel sufficient funds to conduct an adequate mitigation investigation.
 31. Ohio's plain error standard, used to review errors to which counsel did not object at trial, is unconstitutionally overstringent.
 32. The state failed to prove that the aggravating circumstance outweighed the mitigating factors beyond a reasonable doubt.
 33. Defense counsel failed to present evidence in the penalty phase regarding the cultural issues in appellant's background.
 34. Appellant's death sentence is unreliable, inappropriate andviolates the Eighth and Fourteenth Amendments to the United States Constitution.
 35. In preparing her evaluation of appellant, Dr. Kathleen Quinn used the prosecutor's file.
 36. Ohio's capital punishment statutes are unconstitutional because they result in an improper deprivation of the right to life, which is a fundamental liberty interest.
 37. Ohio's capital punishment statutes require imposition of the death penalty if the aggravating circumstances outweigh the mitigating factors by even the slightest amount.
 38. Ohio's capital punishment statutes improperly shift the burden of production upon defendants to establish the existence of mitigating factors.
 39. Ohio's capital punishment statutes are unconstitutional because the decision on whether to capitally indict a defendant is left to the unfettered discretion of the prosecutor.
 40. Ohio's death penalty is in violation of international laws and Article VI of the United States Constitution.
 41. Ohio's capital punishment statutes charge appellate courts with performing a de novo review but improperly restrict mitigating factors to those presented at trial.
 42. The trial court made improper statements to prospective jurors during voir dire.
 43. The trial court failed to excuse individuals who indicated that they could not give appellant a fair hearing.
 44. Ohio's death penalty scheme violates the Ohio and United States Constitutions.
45. Pretrial publicity improperly influenced the jury.
 46. Appellant's indictment was returned by an improperly constituted grand jury and upon inadequately presented evidence.
 47. Ohio's death penalty statutes improperly impose a mandatory requirement of death.
 48. The grand jury proceedings were not recorded as required by Crim.R. 22.
 49. On appeal, the state failed to establish beyond a reasonable doubt that any constitutional error which occurred during appellant's trial did not contribute to his convictions and sentences.
 50. Appellant was denied a fair and impartial review of his death sentence because trial courts ignore the dictates of R.C. 2929.03(G).
 51. Defense counsel did not request an independent expert pathologist.
 52. The state failed to state its reasons for exercising its peremptory challenges.
 53. The trial court failed to instruct the jury in the sentencing phase that appellant enjoyed a presumption of life.
 54. The trial court improperly instructed the jury in the mitigation phase that a life verdict must be unanimous.
 55. The trial court failed to appoint a non-attorney expert to assist defense counsel with jury selection.
 56. The composition of the special venire was an unrepresentative sample of the population of Cuyahoga County.
 57. Police misconduct occurred during the investigation of the state's case against appellant.
 58. The trial court improperly instructed the jury that it could infer from the fact that appellant used a deadly weapon that he specifically intended to cause the death of the victim.
 59. The trial court gave the jury an incorrect definition of circumstantial evidence.
 60. The penalty phase instructions created a mandatory presumption in favor of the death sentence.
 61. The trial court improperly instructed the jury that it could consider any other factors that are relevant to whether the defendant should be sentenced to death.
 62. The City of Cleveland failed to timely respond to appellant's requests for information made pursuant to R.C. 149.43.
 63. The Cleveland Police Department failed to test appellant's blood for the presence of alcohol.
[1] Appellant's original petition was filed on July 12, 1994.
[2] A summary of appellant's claims is set forth in Appendix B.
[3] Thus, appellant's petitions remained pending with the trial court for over five years before the trial court rendered a decision.
[4] Appellant's assignments of error are set forth in Appendix A.