OPINION
On July 10, 2000, Defendant-Appellant Melanie Nelson was indicted on ten counts of forgery and one count of theft. Following a bench trial, Nelson was convicted on all counts. The court sentenced Nelson to one year for each forgery count and six months for the theft count. The first five forgery counts were ordered to be served consecutively and the second five forgery counts and the theft count were to be served concurrent to those. Nelson has appealed this judgment raising the following assignments of error:
 Appellant's convictions based on complicity and conspiracy are against the manifest weight of the evidence., Appellant was denied a fair trial due to the ineffective assistance of trial counsel.
 The court erred in permitting the prosecution to use evidence of prior bad acts.
We will address these assignments slightly out of order to better facilitate their discussion.
 I
While we are unsure why complicity and conspiracy were mentioned in this assignment of error, we presume that Nelson is challenging that all of her convictions for forgery and theft were against the manifest weight of the evidence. When reviewing a manifest weight claim, the appellate court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387. A verdict should only be overturned in extraordinary situations when evidence weighs heavily against the conviction. Id. Because the trial court had the opportunity to see and hear the witnesses, we must give substantial deference to its credibility determinations. State v. Lawson (Aug. 27, 1997), Montgomery App. No. 16288, unreported, at p. 4. In fact, "we will not disturb the choice made by the trier of fact between credible witnesses and their conflicting testimony unless it is so incredible that it defies belief."City of Fairborn v. Boles (May 15, 1998), Greene App. No. 97-CA-110, unreported, at p. 3.
Prior to any testimony, the parties stipulated that Nelson had presented all ten checks for payment at E Z Stop or Jordan's Super Value. In addition, the parties stipulated that Nelson had pawned her sister's camcorder at Loan Star Pawn Shop. Finally, the parties stipulated to Nelson's voluntary polygraph report which indicated deception.
Robert Leighly testified that he had known Nelson for almost forty years. Some time around 1997, they became next door neighbors. According to Leighly's testimony, Nelson would visit him frequently. While he denied that she had ever driven him anywhere, he did say that she would come in about once a week and "help." In return, he would pay her cash. Leighly claimed that he had only written a check to Nelson once in the past, which was approximately two years before the incidents involved in this case. Leighly indicated that his monthly income was a little over $1200 per month from pension and disability.
In November or December of 1999, Leighly attempted to cash a $240 check at his bank when the bank informed him that his account was overdrawn. Upon further investigation, he discovered that a book of checks that he had not begun using was missing from on top of the television in his home. After inquiring further at the bank, Leighly determined that ten checks from this book totaling $1131.50 had been cashed by Nelson over a span of fifteen days. The numbers of the cashed checks were 782 through 792, with the exception of 785. Subsequently, Leighly reported the situation to the police. Leighly denied that he signed any of these checks.
Although it is not clear from the record why, apparently the initial report to the police only involved three checks. Some time after this initial report was filed, Nelson called Detective Johnson, who was in charge of the investigation, and admitted she took the three checks. She claimed that Leighly had already made the checks out to her, but that he was drunk and had refused to give them to her. So she had taken them from his residence and cashed them. The record does not indicate that Nelson made any statements about the remaining seven checks.
Later that day, following Nelson's phone call to Detective Johnson, Officer Norris arrived at Nelson's home to serve her arrest warrant. He heard two voices inside before he knocked. In response to his knock, a woman answered the door and stated that Nelson was not there. Nonetheless, the woman gave Officer Norris permission to look around the residence, and he found Nelson hiding in a closet. At Nelson's request, the officer contacted Detective Johnson. After Nelson spoke with Detective Johnson, Officer Norris read her Miranda rights and she wrote out a statement regarding the three checks. Again, she mentioned nothing about the other seven checks. At some point after Nelson's arrest, Detective Johnson somehow discovered that the other seven checks had also been taken and cashed.
Additionally, Nelson's sister testified that she did not give Nelson permission to pawn her camcorder. She indicated that she had no idea how much money the pawn shop gave Nelson for the camcorder. Nelson testified that her sister suggested she pawn the camcorder to pay bills, and that Nelson had given her sister the money that she had received from the pawn shop.
Nelson was charged with ten counts of forgery pursuant to R.C.2913.31(A)(3) which states: "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged." In order to be found guilty of uttering, or transferring, a forged document, the state does not need to prove the defendant created the forged document. State v. Bounds (1995), 107 Ohio App.3d 700, 705. Because the parties stipulated that Nelson cashed all of these checks, the only issue was whether the checks were forged. Leighly testified that he did not sign any of them. Nelson testified that he did. We must give deference to the trial court's apparent determination that Leighly was more credible than Nelson.
We must also defer to the credibility determination between Nelson and her sister regarding the camcorder. The trial court apparently believed Nelson's sister that Nelson did not have permission to take the camcorder to the pawn shop. Based on the foregoing, we find that the convictions were not against the manifest weight of the evidence. Nelson's first assignment of error is overruled.
 III
Nelson argues in her third assignment of error that the trial court erred in allowing testimony regarding her past drug use. We note initially that defense counsel failed to object to this below, so we must consider this assignment under the plain error standard. State v.Madrigal (2000), 87 Ohio St.3d 378, 395. In reviewing a case for plain error, the appellate court must view all of the evidence properly admitted at trial and determine whether the defendant would have been convicted even if the error had not occurred. State v. Slagle (1992),65 Ohio St.3d 597, 605, certiorari denied (1993), 510 U.S. 833,114 S.Ct. 106. Moreover, plain error must be "taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
The following discussion occurred while Nelson was on the stand:
 Ms. Nelson, in November of 1999 did you have a crack problem, crack cocaine[?]
 No, sir, I didn't. I smoked marijuana at that time.
Have you ever had a crack problem?
 Yes, I did. It wasn't a problem. I was never addicted.
When were you into crack cocaine[?]
I did it for about 6 months.
When?
Way before I moved over to Cincinnati Avenue.
Nelson alleges that the questions regarding her drug use elicited improper character evidence pursuant to Evid.R. 404(B). This rule provides that evidence of prior bad acts is not admissible to prove a person acted in conformity with that character. However, the rule further states that this evidence is admissible for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
Nelson was charged with cashing forged checks totaling over $1100. The question asking whether she had a drug problem could have been aimed at establishing a motive for this crime. While her answer indicated that she did not have a drug problem at the time of the crime, we do not find that it was improper for the state to ask the question in an attempt to establish a motive. In any event, Nelson has not demonstrated that the outcome of the trial would have clearly been different had this testimony not been admitted.
Accordingly, Nelson's third assignment of error is overruled.
 II
In Nelson's second assignment of error, she alleges that her counsel provided ineffective assistance at trial. When a defendant raises a claim of ineffective assistance of counsel, a two-step process is involved. We must first determine whether counsel has violated any essential duties to his client, and second, whether the defendant was prejudiced by counsel's ineffectiveness. State v. Bradley (1989), 42 Ohio St.3d 136, 141-42, see also Strickland v. Washington (1984), 466 U.S. 668, 687. When determining the ineffectiveness of counsel's performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 142, citing Strickland, supra, at 688. However, courts must begin with a strong presumption that counsel's performance was professionally reasonable. Id.
Nelson argues that counsel was ineffective for two reasons. First, she claims counsel should have employed a handwriting expert to demonstrate that Leighly signed the checks, thus proving that they were not forged. Unfortunately, we would need to look outside the record to determine whether such testimony would have been available and beneficial to the defense. We are not permitted to look outside the record in a direct appeal. State v. Cooperrider (1983), 4 Ohio St.3d 226, 228.
Next, Nelson challenges counsel's failure to object to the question regarding her drug use. As we established in our previous discussion, we do not find that the question asked by the state was improper pursuant to Evid.R. 404(B), because it was admissible to establish motive. Accordingly, we do not find that trial counsel was ineffective for failing to object to an admissible question.
Based on the foregoing, Nelson did not establish that counsel's performance fell below an objective standard of reasonableness. We need not address the second step of the ineffective assistance analysis. Nelson's second assignment of error is therefore overruled.
Judgment affirmed.
FAIN, J., and YOUNG, J., concur.